UNITED PAPERWORKERS INTERNATIONAL UNION, AFL–CIO, CLC and its Local No. 1034, Plaintiffs,

v.

WHITE PIGEON PAPER COMPANY, Defendant.

No. 4:90–CV–151.

United States District Court, W.D. Michigan, S.D.

Feb. 8, 1993.

Michael Hamilton, Legal Dept., Nashville, TN, J. Douglas Korney, Korney & Heldt, Birmingham, MI, for plaintiff.

Brad A. Rayle, Howard & Howard, PC, Bloomfield Hills, MI, for defendant.

## OPINION

QUIST, District Judge.

This case involves a question of whether the plaintiffs, United Paperworkers International Union, AFL–CIO, CLC and its Local No. 1034, ("Union"), can compel the defendant, White Pigeon Paper Company ("Company"), to submit to arbitration a dispute over the remedy for a breach of a collective bargaining agreement. This action is brought in this Court pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185.

### Background Facts

The Union and the Company are parties to a collective bargaining agreement ("Agreement") that covers the terms and conditions of employment for employees in the bargaining unit represented by the Union at the Company's White Pigeon, Michigan facility. Article VII of the Agreement sets forth procedures for processing grievances. Article VIII of the Agreement sets forth procedures for final and binding arbitration of unresolved grievances. In addition,

> If the arbitrator finds that the Company has violated the agreement, the arbitrator may award back pay to compensate the affected employee for any wages lost because of such violation. . . .

Article VIII, Section 5.

The Voluntary Labor Arbitration Rules applies to disputes submitted to arbitration. Article VIII, Section 1. According to the Voluntary Labor Arbitration Rules, a hearing is closed "as of the final date set by the arbitrator for filing" briefs or other documents. American Arbitration Association, Voluntary Labor Arbitration Rules ¶ 31 (as

amended and in effect January 1, 1988). The arbitrator may reopen the hearings for good cause before an award is made. *Id.* at ¶ 32. The arbitrator shall interpret these rules as they relate to the arbitrator's power. *Id.* at ¶ 46.

On November 29, 1988, the Union filed a grievance pursuant to the procedures set forth in Article VII of the Agreement. The grievance alleged that the Company had violated the Agreement "by unilaterally implementing a four-crew operation in the power plant, by unilaterally establishing a wage rate for the job classification of fireman within the power plant, by eliminating the engineers' classification within the power plant line of progression and by establishing a shift schedule in which some shifts begin on days other than Monday." Complaint ¶ 7. The grievance procedure did not resolve the dispute, and it proceeded to arbitration.

The following issues were presented to the arbitrator:

—Whether the Company acted within its rights when it implemented a four crew/ three shift operation in the Power Plant Department.

—Whether the Company had the right to eliminate the engineer job classification in the line of progression.

—Whether the Company had the right to change the job duties of the firemen by eliminating the engineer's position.

—Whether the Company had the right to continue the firemen at the contracted rate of pay after changing the duties.

—Whether the contract was violated at Article IX, Section 3, when the weekly schedules commenced on weekdays other than Monday.

*White Pigeon Paper Company and United Paperworkers International Union Local 1034,* No. 54–30–0028–89, slip op. at 2 (May 14, 1990) (Groty, Arb.). The arbitrator was to determine the appropriate remedy if he found a violation.

On December 15, 1989, and January 25, 1990, Arbitrator C. Keith Groty heard the disputes.

On May 14, 1990, Arbitrator Groty issued an Opinion and Award which partially sustained the Union's grievance finding that the Company violated the Agreement by scheduling "the crews in such a way that the three shifts did not all begin on Monday for five consecutive days with the Saturday and Sunday overtime opportunities being offered to those who regularly work the five day schedule." *White Pigeon Paper Co. and United Paperworkers International Union Local 1034,* No. 54–30–0028–89, slip op. at 15 (May 14, 1990) (Groty, Arb.). The Opinion and Award also stated that:

> [w]hile it is clear that the Employer has violated the contract ..., it is not clear that there is any compensable damage for the affective [sic] employees except with the possible loss of overtime opportunity. The arbitrator has deliberated over this matter and has found it impossible to determine which persons may have been damaged and the extent of such damage. Therefore, the arbitrator will retain jurisdiction to allow for the presentation by the Union and the defense by the Company if the Union determines that it can identify the specific individuals who were damaged and a procedure by which a determination can be reached on the extent of those damages. If the Union so chooses to exercise this option, it must be do [sic] within 60 days of the date of this award.

*Id.* The arbitrator retained jurisdiction for 60 days. *Id.* at 16.

On or about July 10, 1990, the Union submitted materials to the Arbitrator concerning damages.

On August 3, 1990, the Company filed a brief objecting to the arbitrator's attempt to retain jurisdiction. The Company argued that the arbitrator was precluded from allowing the Union to present new evidence after he had issued his Award.

In a letter dated August 20, 1990, Arbitrator Groty agreed with the Company's position. The letter was addressed to Mary Kay Peck, Tribunal Administrator of the American Arbitration Association. The letter stated:

> The arbitration award dated May 14, 1990 is final and binding per the express language of the applicable labor agreement.

The arbitrator's attempt to retain jurisdiction was to provide the Union an opportunity to establish which employees were damaged and to the extent of that damage based on the award. I did this rather than causing the parties to be forced to arbitrate or seek circuit court intervention to interpret or establish enforcement of the award. I must agree, however, with Mr. Terrell's point in his letter of July 30, 1990, that the arbitrator would be in violation of the Code of Professional Responsibility for Arbitrators of Labor Management Disputes if I attempted to make any additional awards without providing the Employer an opportunity to cross examine any additional evidence, and, most importantly, receiving the consent of both parties to such a procedure. Therefore, since the Company objects to any further involvement of this arbitrator in this matter, I have no standing under contract to take any further action and leave the parties to any contractual or legal remedies which they may have.

(Letter from Groty to Peck of 8/20/90).

By a letter dated October 25, 1990, the Union requested that the issue of damages be submitted to arbitration. The Company has refused this request because it claims that the Opinion and Award issued by Arbitrator Groty on May 14, 1990, disposed of this issue.

On November 14, 1990, the Union filed an action with this Court requesting this Court to compel the Company to submit the issue of damages to arbitration. The parties have filed cross-motions for summary judgment.

### Discussion

Summary judgment is appropriate if there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56. The rule requires that the disputed facts be material. Material facts are facts which are defined by substantive law and are necessary to apply the law. A dispute over trivial facts which are not necessary in order to apply the substantive law does not prevent the granting of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477

U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The rule also requires the dispute to be genuine. A dispute is genuine if a reasonable jury could return judgment for the nonmoving party. *Id.* This standard requires the nonmoving part to present more than a scintilla of evidence to defeat the motion. The summary judgment standard mirrors the standard for a directed verdict. The only difference between the two is procedural. Summary judgment is made based on documentary evidence before trial, and directed verdict is made based on evidence submitted at trial. 477 U.S. at 250–51, 106 S.Ct. at 2511. A moving party who does not have the burden of proof at trial may properly support a motion for summary judgment by showing the court that there is no evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). If the motion is so supported, the party opposing the motion must then demonstrate that there is a genuine issue of material fact for trial. *Id.* The Court must draw all inferences in a light most favorable to the non-moving party, but the Court may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Financial Corp. v. Van Sickle,* 967 F.2d 233, 236 (6th Cir.1992) (quoting *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

An analysis of whether a particular dispute is subject to arbitration must begin with the famous *Steelworkers Trilogy: Steelworkers v. American Mfg. Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *Steelworkers v. Warrior and Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); and *Steelworkers v. Enterprise Wheel and Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). The *Steelworkers Trilogy* held that arbitration is a matter of contract and a party cannot be required to arbitrate a matter which the party did not agree to arbitrate. "This axiom recognizes the fact that arbitrators derive their authority to resolve disputes only because the parties have

agreed in advance to submit such grievances to arbitration." *AT & T Technologies, Inc. v. Communications Workers,* 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986). The scope of an arbitrator's authority is limited to the issue submitted to the arbitrator by the parties. *Sunshine Mining Co. v. Steelworkers,* 823 F.2d 1289, 1294 (9th Cir. 1987). An issue properly submitted to arbitration and decided by an arbitrator cannot be relitigated in federal court. *Teamsters v. United Parcel Service,* 921 F.2d 218 (9th Cir.1990). However, an issue may be remanded to the arbitrator if the arbitrator failed to decide an issue. *Grand Rapids Die Casting Corp. v. Local Union No. 159,* 684 F.2d 413 (6th Cir.1982). Remand is appropriate "to avoid the draconian choice of penalizing either the company or the employee for what is, after all, the arbitrator's failure." *Id.* at 416. In addition, a district court may resubmit an existing labor arbitration award to the original arbitrator for interpretation or amplification. Labor arbitration proceedings are different from other arbitration proceedings in which the arbitrator is stripped of its powers after it executes an award. The courts developed the labor exception "as a necessary corollary to the courts' reluctance to interpret either collective bargaining agreements or arbitration awards based on the construction of such agreements." *Locals 2222, 2320–2327 v. New England* 628 F.2d 644, 647 (1st Cir.1980). The court must look at the questions submitted to arbitration to decide whether an issue was submitted to arbitration and the arbitrator has reached a final decision on the issue, whether the issue was submitted and the decision needs to be remanded for interpretation or amplification, or whether the issue was never submitted to arbitration.

■ Arbitrators have the authority to issue interim awards. *Sunshine Mining Co. v. Steelworkers,* 823 F.2d 1289 (9th Cir.1987). An award based on future findings "rendered it a partial or interim award, even though it was not so designated." *Id.* at 1294.

■ In the instant case, the parties are bound by the Arbitration Award. The Arbitration Award became binding on August 20, 1990, when the arbitrator stated that "[t]he arbitration Award dated May 14, 1990, is final and binding per the express language of the applicable labor agreement." The arbitrator's decision to make his May 14 Opinion and Award final was based on his belief that he had exceeded his authority by retaining jurisdiction for sixty days to allow the Union to present evidence of who had been damaged.

The questions of whether a violation had occurred and what an appropriate remedy would be if a violation had occurred were *both submitted to the arbitrator.* The Union admitted this at oral argument. Moreover, the arbitrator answered both of these questions. The arbitrator stated that violation occurred but that he found no damages. Specifically, the arbitrator stated:

> [w]hile it is clear that the Employer has violated the contract ..., it is not clear that there is any compensable damage for the affective [sic] employees except with the possible loss of overtime opportunity.

The arbitrator continued to state that he deliberated over the matter and could not determine who had been damaged and the extent of those damages.

The arbitrator originally decided to give the Union "a second bite at the apple" by retaining jurisdiction and allowing the Union to submit additional evidence to document who was damaged and the extent of those damages. Later, the arbitrator decided that he did not have the power to retain jurisdiction and, therefore, stated that his May 14 Opinion and Award was final and binding.

The result of the arbitrator's action was a final and binding decision that a violation had occurred but that no damages were proven.

The arbitrator's decision not to allow additional evidence to demonstrate damages does not penalize the employees for the arbitrator's mistake, as the Union would like this Court to believe and the Sixth Circuit held in *Grand Rapids Die Casting Corp. v. Local Union No. 159,* 684 F.2d 413 (6th Cir.1982). *Grand Rapids Die Casting* is quite distinguishable from the instant case. In *Grand Rapids Die Casting,* the arbitrator illegally tried to create a new contract for the parties because he did not like the contract agreed

to by the parties. The Sixth Circuit said that this illegal usurpation of power by the arbitrator should not inure to the injury of the parties to the arbitration. In the instant case, no one claims that the arbitrator usurped any power of any party to the contract. Rather, the arbitrator in this case stayed within the four corners of the contract and addressed all of the issues raised by the arbitration. As to the issue of remedy, he—according to his own words—after consideration of the proofs, simply was not persuaded that the Union proved any damage to any individual.

The Union desires to submit additional proofs as to remedy even though neither the Union nor the arbitrator did anything to preserve that issue for subsequent decision. In other words, it appears to this Court that the Union seeks to correct inadequacy of proofs as to remedy. The arbitrator barred this attempt when he said that his award of May 14, 1990 was "final and binding per the express language of the applicable labor agreement." The Court is bound by this clear statement of the arbitrator.

At the end of every trial, every trial lawyer—whether there is a "victory" or "loss"—can think of the question that should have been asked and the question that should not have been asked. But every trial comes to an end, and in this case, the arbitrator ended the arbitration unconvinced that there should be a remedy of damages to individuals.

Therefore, the Union's Motion for Summary Judgment is DENIED, and the Company's Motion for Summary Judgment is GRANTED. An Order consistent with this Opinion will be issued.