**John E. OSBORN and Donald D. Eley, Plaintiffs–Appellants and Cross–Appellees**

v.

**Michael K. PACKARD, Sunborne Development, LLC, and Sunborne Investment, LLC, f/k/a Packard Family General Partnership, A Colorado general partnership, Defendants–Appellees and Cross–Appellants.**

No. 03CA0679.

Colorado Court of Appeals, Div. II.

Nov. 18, 2004.

Certiorari Denied Aug. 8, 2005.

Davis and Ceriani, P.C., Bruce E. Rohde, Denver, Colorado, for Plaintiffs–Appellants and Cross–Appellees.

Hamil–Hecht LLC, J. Lawrence Hamil, Michelle W. Stern, Denver, Colorado, for Defendants–Appellees and Cross–Appellants.

ROTHENBERG, J.

Plaintiffs, John E. Osborn and Donald D. Eley, appeal the district court judgment and order confirming an arbitrator's award purporting to settle their respective interests in partnership ventures and those of defendants, Michael K. Packard, Sunborne Development, LLC, and Sunborne Investment, LLC (collectively Packard). Packard cross-appeals. We vacate the judgment and order confirming the arbitrator's award and remand with directions.

Plaintiffs are limited partners in Sunborne XVI, Ltd., a Colorado limited partnership, which controls 200 acres of land near Centennial Airport in Arapahoe County. Michael Packard controls Sunborne Development, LLC, which is the general partner of Sunborne XVI, Ltd., and Sunborne Investments, LLC, which is a limited partner in Sunborne XVI, Ltd.

A dispute arose between plaintiffs and Packard over partnership matters, including as relevant here, the amount of control each party would have over so-called "vertical entities" in regard to land owned by the general partnership. These matters were submitted to arbitration, along with other disputed matters which were not appealed.

No transcript of the proceedings before the arbitrator is available, and the record is sparse. However, the arbitrator issued an original ruling and three clarifications, two of which the arbitrator referred to as rulings.

In his original ruling on February 14, 2002, the arbitrator determined, as relevant here, that "when a development or vertical entity is formed, the percentage ownership would be as set forth" in a certain exhibit, and "[b]ased ... on the numerous exhibits submitted and the testimony of the parties," the ruling went on to state:

[T]he present Partnership percentages of Sunborne XVI are as follows:

| | |
|---|---|
| Sunborne Development | 69% |
| Sunborne Investment | 1% |
| Eley | 15% |
| Osborn | 15% |

When vertical entities are formed among the parties, the Partnership interest of such vertical entities such as development or management companies would be as follows:

| | |
|---|---|
| Eley | 25.5% |
| Osborn | 25.5% |
| Sunborne or its entities | 49.0% |

Thereafter, plaintiffs filed a motion for clarification, and Packard responded. After considering the submissions, the arbitrator issued an "additional Ruling" in April 2002. The arbitrator's first clarification stated:

Based on [the first ruling], whether construction of improvements, including office, warehouse, and other structures, is carried out under the umbrella Agreement of Limited Partnership of Sunborne XVI, Ltd. . . . . . or under newly formed entities created for such interests, Osborn and Eley's limited partnership interests in such buildings, etc., . . . . are: Osborn 25.5%,

Eley 25.5%. Similarly, any development, management, property management, booking organization related to or carried on either under the Agreement of Limited Partnership of Sunborne XVI, Ltd., or in a separate entity, dealing with such buildings or structure, the limited partnership interest would be as outlined above.

In May 2002, the arbitrator issued an "Additional and Further Ruling" following a conference call with the parties' counsel. The arbitrator explained that "for some inexplicable reason the parties are unable to agree as to who can 'control' Sunborne XVI, Ltd., in connection with the operation and management of the so-called 'vertical entities.' '

The arbitrator cited provisions of the partnership agreement and his original ruling and stated, as relevant here, "Insofar as any vertical entities are concerned in conducting business pursuant to Section 2.4 of the Partnership Agreement, the limited partners, pursuant to Sections 6.5 and 8.1, have the right to remove and appoint the General Partner for the vertical entities." The arbitrator added:

> Would it be simpler to create an entirely new limited partnership agreement for the vertical entities along the general lines of Exhibit 26 with the percentages adjusted pursuant to the [parties'] December 1998 Agreement? The answer obviously is yes; however, if the partners are unwilling to do so and desire to function under the umbrella of the present Partnership Agreement, that can be accomplished. The management of the leasing activities, subleasing activities, etc., as distinguished from the vertical entities, remain[s] pursuant to the Agreement of December 1998 with Sunborne Investments having 69%, Osborn 15%, Eley 15% and Sunborne Development 1%.

Plaintiffs then filed a third motion for clarification, and in October 2002, the arbitrator issued a "Response to 'Third Motion for Clarification of Ruling.' ' The arbitrator explained that the parties were requesting a further ruling "as to the right of the limited partners to remove Sunborne Development LLC as a General Partner in regard to any 'vertical' developments." The arbitrator add-

ed that he "is now asked to rule that based on [his earlier] decision, Osborn and Eley, pursuant to their 51% ownership interest in vertical entities, have a right to remove Sunborne Development LLC as the general partner for such vertical entities."

The arbitrator cited three relevant sections of the partnership agreement that governed removal of the general partner and voting rights and concluded: "Based on these sections, since Osborn and Eley now own a 51% interest in any vertical entities, they have a right to determine who the general partner should be in regard to such vertical entities."

Thereafter, plaintiffs filed a motion in the district court for an order confirming the arbitrator's rulings, which included his February 2002 ruling, plus the additional rulings in April, May, and October 2002. The court granted the motion on October 30, 2002, pursuant to Colo. Sess. Laws 1975, ch. 154, § 13–22–216 at 577.

On November 14, 2002, the district court entered judgment confirming the arbitration award. However, the language of the judgment departed from that used by the arbitrator. The judgment stated:

> The Limited Partnership Interests of SunBorne XVI, Ltd., as of December 8, 1998, with respect to any "vertical development" *activities*, including construction and improvement planning, the construction of any buildings or other improvements of any kind or nature, construction management, property management, and any other such development are as follows:
>
> | | |
> |---|---|
> | SunBorne Development, LLC | 1% |
> | SunBorne Investment, LLC | 48% |
> | Donn D. Eley | 25.5% |
> | John E. Osborn | 25.5% |

(Emphasis added.)

Although the judgment reiterated the main portions of the arbitrator's cumulative rulings, the court substituted the word "activities" for "entities." Packard objected that the court's substitution was an expansion of the arbitrator's ruling. The court contacted the arbitrator, without notifying either party, to determine which word accurately reflected the arbitrator's rulings. The arbitrator replied and explained his intent in a letter to

the court. The parties later learned of this correspondence between the arbitrator and the court.

On February 8, 2003, after briefing by the parties, the court issued a modified judgment, replacing the word "activities" with the word "entities" in paragraphs 1, 2, and 4 of the court's original judgment. However, because the word "activities" actually appeared in paragraphs 1, 3, and 4 of the court's original judgment, Packard filed another motion for clarification or to alter or amend the amended judgment. On March 21, 2003, the court issued a final order correcting its previous clarification, and the word "activities" in paragraphs 1, 3, and 4 of its original judgment was substituted with the word "entities."

Plaintiffs then filed a notice of appeal in this court. On the same day, they filed motions in the district court: (1) for clarification or to alter or amend the judgment; (2) for contempt; (3) for specific performance; (4) for a stay of enforcement pending appeal; (5) for leave to deposit money in the registry of court; and (6) for a forthwith hearing. The court summarily denied the motions.

Plaintiffs petitioned the Colorado Supreme Court for an order and rule to show cause why Packard was not complying with the district court's judgment. The court issued an order to show cause, but later discharged it as improvidently granted.

## I. Cross–Appeal

Because it disposes of certain issues, we address Packard's cross-appeal first.

### A.

■ Packard contends that the arbitrator's original ruling was correct and unambiguous and that, because his later rulings and clarification substantively changed the original ruling, the arbitrator lacked jurisdiction to enter the later rulings. We disagree.

In support of this argument, Packard relies on the common law doctrine of *functus officio*, which provides that after delivery of an arbitrator's ruling, the arbitrator loses subject matter jurisdiction to amend the ruling.

However, the applicable Colorado statute now gives the arbitrator limited authority to modify or correct an award once it has been delivered. Colo. Sess. Laws 1975, ch. 154, § 13–22–211 at 575 (now recodified with amendments as § 13–22–220, C.R.S.2004); *see Applehans v. Farmers Ins. Exch.*, 68 P.3d 594 (Colo.App.2003). The relevant version of the statute states in relevant part:

> On application of a party ... the arbitrators may modify or correct the award upon the grounds stated in section 13–22–215(1)(a) and (1)(c) or for the purpose of clarifying the award.... The award so modified or corrected is subject to the provisions of sections 13–22–213 to 13–22–215.

*Cf.* § 13–22–220(1), C.R.S.2004.

The official commentary of the Uniform Arbitration Act on which the Colorado act is modeled clarifies that this section was intended to modify the doctrine of *functus officio.*

In any event, Packard never objected to the arbitrator's authority to issue such clarifications or to the arbitrator's attempt to explain what he meant by the term "vertical entities," or to other portions of the arbitrator's ruling. When the arbitrator issued his original ruling and three clarifications, two were in response to a motion for clarification, and the third was in response to a conference between the arbitrator and the parties. Hence, Packard is precluded from raising his objection for the first time on appeal. *See Kutch v. State Farm Mut. Auto. Ins. Co.*, 960 P.2d 93 (Colo.1998)(the failure to comply with the Uniform Arbitration Act's special statutory procedure for challenging an arbitration award on its merits or the power of arbiters to make an award bars any objection to the award in a confirmation proceeding).

Accordingly, we conclude the arbitrator did not exceed his jurisdiction.

### B.

■ Packard next contends the district court erred in issuing a final judgment that interpreted and substantively changed the meaning of the arbitrator's ruling. We

agree, but we reject Packard's argument that the proper remedy is to remand to the district court with directions to confirm only the arbitrator's original ruling or, alternatively, to confirm the original ruling and his subsequent ruling and clarifications. We conclude the judgment confirming the arbitrator's award must be vacated and the case remanded with directions to the district court to remand to the arbitrator for further clarification.

The district court plays a very limited role in a proceeding confirming an arbitrator's award. "Upon application of a party, the court shall confirm an award, unless within the time limits imposed in this part 2 grounds are urged for vacating or modifying or correcting the award, in which case the court shall proceed as provided in sections 13–22–214 and 13–22–215." Colo. Sess. Laws 1975, ch. 154, § 13–22–213 at 576 (now recodified with amendments as § 13–22–222, C.R.S.2004). The court may only review an arbitration award based on the grounds enumerated in the relevant statutes. Colo. Sess. Laws 1975, ch. 154, §§ 13–22–214 & 13–22–215 at 576 (recodified with amendments as § 13–22–224, C.R.S.2004).

■ Applications to the district court shall be made within thirty days after delivery of a copy of the award to the applicant. Colo. Sess. Laws 1975, ch. 154, §§ 13–22–214 and 13–22–215 at 576, cf. §§ 13–22–223(2), 13–22–224(1), C.R.S.2004 (providing ninety days). In the absence of appropriate grounds to modify, vacate, or correct an award, the court is required to confirm the award without reviewing the merits. *McNaughton & Rodgers v. Besser*, 932 P.2d 819 (Colo.App.1996).

Here, plaintiffs petitioned the district court to confirm the arbitration award, not to modify, vacate, or correct the award. Although the court issued an order nominally confirming the award—which the court identified as the arbitrator's original ruling and his three clarifications—the court substantively changed the arbitrator's rulings instead of confirming the arbitration award and entering judgment consistent with that award.

Accordingly, we vacate the district court's order of October 2002 confirming the award and its final order of March 2003 entering judgment.

For the reasons set forth below, we also remand to the district court with directions to remand to the arbitrator for clarification.

## II. Plaintiffs' Appeal

■ Plaintiffs contend the arbitrator's rulings unambiguously give them the present right to control the partnership's vertical development activities. Alternatively, they argue that, if we conclude the arbitrator's rulings are ambiguous, the case should be remanded to the district court with directions to remand the matter to the arbitrator. We conclude the arbitrator's rulings are ambiguous and that such a remand is required.

As noted earlier, former § 13–22–211 provides that "on submission to the arbitrators by the court under such conditions as the court may order, the arbitrators may modify or correct the award upon the grounds stated in the former section 13–22–215(1)(a) and (1)(c) or for the purpose of clarifying the award."

In *Landmark Petroleum, Inc. v. Board of County Commissioners*, 870 P.2d 610 (Colo. App.1993), the Board of County Commissioners (BOCC) appealed from an order of the State Board of Assessment Appeals (BAA) granting a taxpayer an abatement of personal property taxes paid.

The case arose when an arbitrator entered an award determining the total adjusted value of the taxpayer's property was $2,604,500. However, the arbitrator then stated his reasons for that valuation and on the last page of the award, he found "the assessed value . . . is $2,604,500 as of June 30, 1990." Based on the arbitrator's statement that the assessed value was $2,604,500, the assessor's office entered an actual value for the property of $8,981,034.

The BOCC appealed the arbitrator's decision to the district court, but the district court granted the taxpayer's motion to dismiss, concluding the arbitrator's decision was final and not subject to review. Thereafter, the arbitrator sent the BOCC a letter and an "Amended Arbitration Award," informing the

BOCC that the initial arbitration award contained a clerical error and that the last page should have read: "[T]he actual value ... is $2,604,500...." The county refused to honor the amended award and the BOCC also denied the taxpayer's request for an abatement and refund based on the arbitrator's clerical error.

The taxpayer then sought relief from the BAA and a hearing was held. The arbitrator testified that the initial arbitration award contained a typographical error on the last page. He stated that he had intended to find the "actual value" was $2,604,500, rather than the "assessed value," and that he had called a county employee two days after he mailed the award to notify the county of the error. The BAA ordered the BOCC to enter an abatement and refund to the taxpayer based on an actual value of $2,604,500, finding that it had jurisdiction to hear the appeal, that the taxpayer presented sufficient probative evidence to prove the valuation was incorrect, and that the actual value should be reduced to $2,604,500.

A division of this court affirmed, and stated, as relevant here:

> [T]here was ambiguity in the arbitration award. In one sentence of the award, the arbitrator states that the "actual value" of the property is $2,604,500. However, later in the award, the arbitrator states that the "assessed value" of the property is $2,604,500. Since the assessed value is determined by using a mathematical formula based on the actual value, the arbitration award is clearly ambiguous.
>
> When an order is ambiguous, the task of the reviewing court is to determine what was intended in issuing the order. To resolve an ambiguity, the entire record and the circumstances surrounding the order must be reviewed.
>
> Here, the arbitrator telephoned and then sent a notice to the county stating he had erroneously written "assessed value" instead of "actual value." In addition, the arbitrator testified at the hearing that he intended the actual value to be $2,604,500. The BAA properly allowed this extrinsic evidence to explain the ambiguity in the award.

*Landmark Petroleum, Inc. v. Bd. of County Comm'rs, supra,* 870 P.2d at 613 (citation omitted).

Because the division in *Landmark* was able to resolve the ambiguity based on the record, it did not need to address whether remand to the arbitrator was appropriate. However, other jurisdictions have addressed the circumstances under which the district court may remand an ambiguous arbitration award to the arbitrator for clarification. They have similarly concluded that whenever possible, the court should attempt to resolve the ambiguity from the record. They have further held that where an ambiguity cannot be resolved by the record, the court must not attempt to interpret the terms. Rather, the matter must be remanded to the arbitrator for clarification. *Tri–State Bus. Machs., Inc. v. Lanier Worldwide, Inc.,* 221 F.3d 1015 (7th Cir.2000).

In *Tri–State,* the appeals court considered whether the district court could construe the term "inventory" in an arbitration award the district court had confirmed and had entered judgment upon in favor of Tri–State.

The arbitration award ordered Lanier to repurchase from Tri–State any Lanier inventory that Tri–State then owned. Tri–State sought a writ of execution and an order compelling Lanier to perform its obligations under the award. The district court ordered Lanier to pay Tri–State $346,265 for Lanier inventory and sales literature in Tri–State's possession. Later, Tri–State filed a second motion for a writ of execution in the amount of $346,265.20. The district court also granted this motion and ordered the immediate issuance of the second writ of execution.

On appeal, Lanier challenged the writs of execution, arguing that the district court erred in including certain items—used equipment and sales literature—within the meaning of "inventory" as used in the arbitration award. The appeals court stated: "It is well-settled that the district court generally may not interpret an ambiguous arbitration award." Instead, "[i]f an award is unclear, it should be sent back to the arbitrator for clarification." *Tri–State Bus. Machs., Inc. v. Lanier Worldwide, Inc., supra,* 221 F.3d at

1017 (quoting *Flender Corp. v. Techna–Quip Co.*, 953 F.2d 273, 279–80 (7th Cir.1992)).

The court in *Tri–State* cautioned that where possible, "a court should avoid remanding a decision to the arbitrator because of the interest in prompt and final arbitration." *Tri–State Bus. Machs., Inc. v. Lanier Worldwide, Inc., supra,* 221 F.3d at 1017 (quoting *Teamsters Local No. 579 v. B & M Transit, Inc.,* 882 F.2d 274, 278 (7th Cir. 1989)). The court held that where an ambiguity can be resolved by the record, the district court need not remand for clarification. But where the ambiguity is *not* resolved by the record, the district court may not interpret the term and must remand the matter to the arbitration panel for clarification. *See M & C Corp. v. Erwin Behr GmbH & Co.,* 326 F.3d 772, 782 (6th Cir.2003)("remand is proper, both at common law and under the federal law of arbitration contracts, to clarify an ambiguous award or to require the arbitrator to address an issue submitted to him but not resolved by the award"; quoting *Green v. Ameritech Corp.* 200 F.3d 967, 977 (6th Cir.2000)); *Colonial Penn Ins. Co. v. Omaha Indem. Co.,* 943 F.2d 327, 333–34 (3d Cir.1991)("Although there is no explicit provision in the [arbitration act] for such a remand, courts have uniformly stated that a remand to the arbitration panel is appropriate in cases where the award is ambiguous."); *Lanier v. Old Republic Ins. Co.,* 936 F.Supp. 839, 848 (M.D.Ala.1996)("the *functus officio* doctrine does not preclude a motion for remand for clarification under the [arbitration act]"); *Hartford Steam Boiler Inspection & Ins. Co. v. Underwriters at Lloyd's,* 271 Conn. 474, 485, 857 A.2d 893 (2004)("many appellate courts have stated that an arbitration award under the [arbitration act] may be remanded for clarification if the award is ambiguous or incomplete"; quoting *Lanier, supra,* 936 F.Supp. at 845); *Gen. Accident Ins. Co. v. MSL Enters., Inc.,* 143 N.C.App. 453, 459, 547 S.E.2d 97, 101 (2001)(citing *Tri–State* with approval and concluding "latent ambiguities are equally worthy of remand as patent ones").

■ Here, we conclude the arbitrator's initial ruling and its later clarifications are ambiguous. We reach this result for several reasons.

First, the arbitrator was asked to clarify the original ruling three times because the parties placed reasonable but different interpretations on a material issue which was arbitrated and which the arbitrator had jurisdiction to resolve. The issue was whether plaintiffs now have the right to determine who the general partner should be in regard to the vertical entities, or whether—as Packard maintains—plaintiffs only have that right "if and when" certain contingencies occur as to the vertical entities. We conclude this issue was squarely raised in the arbitration proceeding and addressed, but not clearly resolved by the arbitrator's rulings.

Second, further evidence that the arbitrator's three clarifications did not resolve the disputed issue is that plaintiffs later sought a contempt citation against Packard to resolve the dispute by asking the court to enforce their rights as plaintiffs interpreted them.

Third, the district court attempted to interpret the arbitrator's award in entering judgment and then tried to resolve the matter by communicating directly with the arbitrator. While well-intentioned, this action was improper because the court acted without notice to the parties, and we do not consider the contents of the arbitrator's letter in reaching our conclusion or for any purpose in resolving this appeal.

Unlike the circumstances in *Landmark Petroleum, Tri–State,* and other cases, neither we nor the district court has an adequate record that would allow us to resolve the ambiguity. Accordingly, the case must be remanded to the district court with directions to remand it to the arbitrator for the issuance of a modified arbitration award that clarifies the ambiguity. The arbitrator may conduct such further proceedings as he deems necessary.

### III. Contempt

■ Because it may arise on remand, we also address plaintiffs' contention that the court abused its discretion in summarily denying their request to hold Packard in con-

tempt for not following the arbitrator's ruling. We agree.

■ Due process is required in arbitration proceedings and includes notice, a reasonable opportunity to be heard, and a proper decision-making tribunal. *See Paymar v. Cann,* 815 P.2d 992 (Colo.App.1991).

■ The parties have a right to seek enforcement of a judgment confirming the arbitrator's award, even after an appeal has been filed. *See Schnier v. Dist. Court,* 696 P.2d 264 (Colo.1985)(where a judgment is not stayed by a proper order or bond, there is no impediment against proceedings in the trial court for the purpose of executing on the judgment). The court abuses its discretion if, as here, it does not provide a reasonable opportunity for the aggrieved party to be heard.

As to the other motions, however, it appears the court lacked jurisdiction to rule on them. *See Colo. State Bd. of Med. Examiners v. Lopez–Samayoa,* 887 P.2d 8 (Colo.1994)(filing of a notice of appeal generally removes jurisdiction from the district court and confers it on the court of appeals). Thus, we conclude the court did not err in denying plaintiffs' motion for leave to deposit money in the registry of court and their request for an order that their failure to contribute money as a result of a capital call under the partnership agreement would have no adverse affect.

The district court's judgment and order confirming the award are vacated, and the case is remanded to the district court with directions to remand the matter to the arbitrator for issuance of a modified arbitration award that clarifies the ambiguity in accordance with the views expressed in this opinion.

Judge NIETO and Judge LOEB concur.