Steven TREADWELL, Juliana Treadwell, Glenn Fricke, Sheryl Fricke, Ronald Kruzel, Colleen Kruzel, James McEntee, Mary Ann McEntee, Jeffrey Smith, Janet Smith, Patricia Sondheimer, Lewis Worker, Theresa Worker, Terry Brogdon, and Cindy Brogdon, Plaintiffs–Appellees,

v.

VILLAGE HOMES OF COLORADO, INC., Defendant–Appellant.

No. 08CA0304.

Colorado Court of Appeals, Div. V.

Nov. 25, 2009.

Hall & Evans, L.L.C., Alan Epstein, Denver, Colorado; The Nelson Law Firm, LLC, Mark W. Nelson, Colleen S. Pennella, Denver, Colorado, for Plaintiffs–Appellees.

Wheeler Trigg Kennedy LLP, Marsha M. Piccone, Michael D. Alper, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge CONNELLY.

This case highlights the great deference that courts owe to arbitration rulings—even where the arbitrators do not fully explain their reasoning. Defendant, Village Homes of Colorado, Inc. (Village Homes), appeals a district court judgment confirming an arbitration award of attorney fees, costs, and post-and pre-judgment interest in favor of plaintiffs (the homeowners). We affirm.

## I. Background

Village Homes sold the homeowners (seven couples and one individual) residences in a planned community. Each of the standard-form sales agreements contained an arbitration clause.

The arbitration clause provided that "[a]ll disputes" regarding the sales agreement or underlying transaction "shall be determined by final, binding arbitration ... and not by a court of law." It defined such disputes to include without limitation any controversies "related to the interpretation or meaning of any terms" of the agreement. It stated that "each party shall pay its own attorneys' fees; provided, however, upon a showing of egregious conduct the arbitrator(s) may award to the prevailing party reasonable attorneys' fees and expenses."

The underlying dispute was triggered by a water district's construction of a well site and water treatment facility on an easement adjacent to the planned community. The homeowners alleged that Village Homes had made misrepresentations that the easement would remain recreational open space and, in so doing, had violated the Colorado Consumer Protection Act (CCPA), §§ 6–1–101 to –115, C.R.S.2009.

The dispute proceeded to a week-long arbitration hearing in April 2007. In May 2007, the parties' agreed-upon arbitrator issued a written award finding that Village Homes had made negligent misrepresentations and violated the CCPA. The homeowners were awarded a total of $525,000 in damages together with attorney fees and costs (in amounts to be determined) pursuant to the CCPA. This initial award did not mention statutory interest. In July 2007, after a further hearing, the arbitrator issued a "Final Arbitration Award," awarding the homeowners $164,478.50 in attorney fees, $28,447.98 in costs, and $105,387.25 in prejudgment interest. As had the initial award, this final award stated that the fees and costs were awarded pursuant to the CCPA.

The homeowners filed a motion in the district court to confirm the arbitration award. Village Homes ultimately paid the $525,000 damages, but it disputed the roughly $300,000 awarded as attorney fees, costs, and interest. The district court confirmed the arbitration award and also awarded post-judgment interest on the unsatisfied portion of the award.

## II. Discussion

Village Homes contends the "arbitrator exceeded the arbitrator's powers." § 13–22–223(1)(d), C.R.S.2009. We disagree.

 Courts independently review whether an arbitrator had power to resolve a dispute. *Allen v. Pacheco,* 71 P.3d 375, 378 (Colo.2003). But where the parties empower an arbitrator to resolve an issue, courts may not review the merits—including issues of contract interpretation—of the arbitration decision. *Container Technology Corp. v. J. Gadsden Pty., Ltd.,* 781 P.2d 119, 121 (Colo. App.1989); *accord Coors Brewing Co. v. Cabo,* 114 P.3d 60, 66 (Colo.App.2004). We review de novo the district court's legal conclusions. *Barrett v. Investment Mgmt. Consultants, Ltd.,* 190 P.3d 800, 802 (Colo.App. 2008).

### A. The Arbitrator's Award of Attorney Fees and Costs

 The agreement here indisputably empowered the arbitrator to decide whether to award attorney fees and costs. We hold that the ultimate award involved the merits of the dispute (not an issue of empowerment), and that it cannot be overturned just because the arbitrator did not fully explain her reasoning.

 The "merits of the award"—not subject to judicial review—"include the arbitrators' interpretation of the contract." *Container Technology,* 781 P.2d at 121. *Container Technology* followed the Supreme Court's teaching that " 'so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.' " *Id.* (quoting *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 599, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960)). Thus, where "an arbitrator resolves disputes regarding the application of a contract, and no dishonesty is alleged, the arbitrator's improvident, even

silly, factfinding does not provide a basis for a reviewing court to refuse to enforce the award." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509, 121 S.Ct. 1724, 149 L.Ed.2d 740 (2001) (internal quotations omitted).

■ Courts "may decline to confirm an arbitration award only in limited circumstances." *Barrett*, 190 P.3d at 802. These limited circumstances, listed in section 13–22–223(1), do not include the merits of the award. Rather, they involve "specific instances of outrageous [arbitral] conduct" and "egregious departures from the parties' agreed-upon arbitration." *See Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, ——, 128 S.Ct. 1396, 1404, 170 L.Ed.2d 254 (2008) (construing similar provisions of the Federal Arbitration Act (FAA), 9 U.S.C. §§ 9–11). The deference to arbitrators is so great, *see Barrett*, 190 P.3d at 802, that referring to judicial review of arbitral awards may be something of a misnomer. *See Wise v. Wachovia Securities, LLC*, 450 F.3d 265, 269 (7th Cir.2006) (Posner, J.).

The line between the unreviewable merits of arbitral awards and the enforceable limits upon arbitrators' powers is most easily blurred where arbitrators must interpret and apply contractual language. Because parties do not empower arbitrators to misconstrue contracts, losing parties could always claim the arbitrators exceeded their powers by failing to follow the contractual preconditions to the challenged awards.

■ In drawing this line, we must be mindful of the benefits of arbitration and the consequences of judicial review. *See Hall Street*, 552 U.S. at ——, 128 S.Ct. at 1405; *Magenis v. Bruner*, 187 P.3d 1222, 1224 (Colo.App.2008). Arbitration is favored—and the parties presumably chose it in the first place—because it ordinarily is less expensive and more expeditious than litigation. *See City & County of Denver v. District Court*, 939 P.2d 1353, 1362–63 (Colo.1997). Judicial review reintroduces the costs and delays the parties sought to avoid by choosing an arbitral forum. *Hall Street*, 552 U.S. at ——, 128 S.Ct. at 1405; *Coors Brewing*, 114 P.3d at 65.

Village Homes' challenge falls on the merits rather than empowerment side of the line. Because the arbitrator indisputably had power to award fees and costs, Village Homes' challenge goes not to *what* the arbitrator did but rather to *why* she did it (and more precisely, to her explanation or lack of explanation for why she did it). We decline to hold the arbitrator exceeded her powers by entering the award without expressly finding that Village Homes engaged in egregious conduct.

■ The parties can require arbitrators to issue written findings and, where agreements so require, arbitrators exceed their powers by not making such findings. *See Western Employers Ins. Co. v. Jefferies & Co.*, 958 F.2d 258, 261–62 (9th Cir.1992). The agreement here, however, required no such findings. Indeed, even the provision relied on by Village Homes referred to a "showing"—not a "finding"—of egregious conduct.

■ Federal courts have uniformly held that absent some requirement in the agreement, "[a]rbitrators are not required to set forth their reasoning supporting an award." *In re Arbitration of Bosack v. Soward*, 586 F.3d 1096, 1104 (9th Cir.2009); *accord American Postal Workers Union v. U.S. Postal Service*, 550 F.3d 27, 30 (D.C.Cir.2008); *PaineWebber Group, Inc. v. Zinsmeyer Trusts Partnership*, 187 F.3d 988, 994 (8th Cir.1999); *Folkways Music Publishers, Inc. v. Weiss*, 989 F.2d 108, 112 (2d Cir.1993). Because "[a]rbitrators have no obligation to the court to give their reasons for an award," they do not exceed their powers by failing to explain their reasoning. *Enterprise Wheel*, 363 U.S. at 598, 80 S.Ct. 1358.

■■ We similarly hold as a matter of Colorado law that arbitrators are not required to explain their reasons for issuing awards authorized by an agreement. Thus, absent an affirmative showing of invalidity, arbitration awards may not be set aside "for want of explanation (or, what is in effect almost the same thing, remanded for an explanation)." *Sargent v. Paine Webber Jackson & Curtis, Inc.*, 882 F.2d 529, 532 (D.C.Cir.1989). We follow the Supreme Court in holding that "[a] mere ambiguity in

the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award." *Enterprise Wheel,* 363 U.S. at 598, 80 S.Ct. 1358.

Given that the award cannot be invalidated or remanded because the arbitrator said too little to justify it, we would have to confirm it had the arbitrator simply written: "Homeowners are awarded [X amount] in fees and costs." Village Homes' challenge may actually be that the arbitrator said too much rather than too little by essentially writing: "Homeowners are awarded [X amount] in fees and costs, *pursuant to the CCPA.*" Regardless, the challenge ultimately is that the arbitrator inadequately justified the award.

▮ The arbitrator might have decided to award fees and costs pursuant to the CCPA by reasoning (1) as a matter of fact, the CCPA violations here were egregious; (2) as a matter of law, CCPA violations are always egregious; or (3) as a matter of contract interpretation, an egregiousness showing is required only for non-statutory fees. Each reason would suffice: the first because courts have "no authority to reweigh th[e] evidence," *Giraldi v. Morrell,* 892 P.2d 422, 424 (Colo.App.1994); the second because courts do not decide "whether the arbitrator's legal rulings were correct," *Coors Brewing,* 114 P.3d at 64; and the third because arbitrators' contract interpretations are binding, *Container Technology,* 781 P.2d at 121.

▮ We do not know whether the arbitrator relied on one, all, or none of these reasons. But as long as there was a reason that *could have justified* the award, an award will not exceed the arbitrator's power just because its explanation was lacking or even mistaken. *See Barrett,* 190 P.3d at 802–03 (confirming attorney fee award, even though "the arbitrators mistakenly referenced an inapplicable [statutory] provision," because "such fees could properly be awarded" under other law not cited by arbitrators).

Because there were grounds on which the arbitrator properly could have based her award, we will not invalidate it or remand for further explanation. This case is unlike *Magenis v. Bruner,* where a division of this court concluded that an arbitrator had exceeded his authority by *denying* attorney fees to the prevailing party even though the contract plainly required such fees and limited the arbitrator to determining their reasonableness. 187 P.3d at 1224–26. Here, unlike in *Magenis,* the agreement gave the arbitrator the power to determine whether to award fees.

We conclude that Village Homes' challenge goes to the merits of that award and not to the arbitrator's power to issue it. Consistent with *Allen* and *Magenis,* we have independently reviewed the agreement and concluded that it empowered the arbitrator to decide whether to award fees. Village Homes' challenge, however, is dependent not on what the arbitrator *did*—issue an award plainly within her power—but rather than on what she *said* (or didn't say) in issuing that award. The present case, therefore, is controlled by cases such as *Enterprise Wheel, Barrett,* and *Container Technology* that preclude review of arbitral merits.

For reasons set forth above, we will not review the merits of the arbitrator's award of fees and costs. We thus do not, indeed we cannot, consider its ultimate correctness.

We need not decide whether an award may be set aside where an arbitrator manifestly disregards an agreement. A prior division has held that manifest disregard is not an independent basis under Colorado law for vacating awards, *Coors Brewing,* 114 P.3d at 64–65, and the Supreme Court recently held likewise under the FAA. *Hall Street,* 552 U.S. at ——, 128 S.Ct. at 1405; *but see Citigroup Global Markets, Inc. v. Bacon,* 562 F.3d 349, 353–58 (5th Cir.2009) (discussing continued divide among federal courts on whether arbitrators may be held to have exceeded their powers where it is shown they manifestly disregarded the agreement); *see also DMA Int'l, Inc. v. Qwest Communications Int'l, Inc.,* 585 F.3d 1341, 1345 & n. 2 (10th Cir.2009) (leaving open "interesting issue" of whether manifest disregard "remains a valid ground for vacatur"). Village Homes has not argued and it cannot show that the arbitrator manifestly disregarded the agreement. *See id.* at 1345 (discussing exceptionally high standards for such a claim).

## B. Remaining Issues

### 1. Prejudgment Interest

██ Village Homes also contends the arbitrator exceeded her power by including prejudgment interest in the final award issued some two and one-half months after the initial award. We disagree.

Colorado law allows an award to be amended if "the arbitrator has not made a final and definite award upon a claim submitted by the parties to the arbitration proceeding." § 13–22–220(1)(b), C.R.S.2009. Village Homes contends this section was inapplicable because the initial award was not denominated an "interim award" and did not expressly reserve the determination of prejudgment interest. We conclude these contentions elevate form over substance. While not called an interim award, the initial award plainly envisioned further proceedings. And while it specifically referenced only the issues of fees and costs, the parties previously had signed a stipulation providing that the arbitrator could consider issues regarding fees, costs, *and statutory interest* after the initial award. Accordingly, we hold that the arbitrator did not exceed her powers by awarding prejudgment interest in the final award.

### 2. Postjudgment Interest and Appellate Attorney Fees

We finally hold that the homeowners are entitled to postjudgment interest on the unsatisfied portion of the arbitration award and to their appellate attorney fees pursuant to § 13–22–225(3), C.R.S.2009. Village Homes' challenges to such interest and fees are predicated on its challenge to the underlying award itself. Because we have held that this underlying award was properly confirmed, we hold the homeowners are entitled to postjudgment interest and appellate attorney fees for successfully defending the arbitrator's award. We remand the case to the district court for it to calculate and award this postjudgment interest and reasonable appellate attorney fees to the homeowners.

## III. Conclusion

The district court judgment confirming the arbitrator's award of attorney fees, costs, and prejudgment interest is affirmed. The case is remanded to the district court for it to award postjudgment interest and reasonable appellate attorney fees to the homeowners.

Judge GRAHAM concurs.

Judge GABRIEL concurs in part and dissents in part.

Judge GABRIEL concurring in part and dissenting in part.

In my view, the question of whether the arbitrator's award of fees under the Colorado Consumer Protection Act (CCPA) was authorized by the parties' arbitration agreement, which expressly limited the grounds on which fees could be awarded, goes to the scope of the arbitrator's powers and, therefore, is properly reviewable by this court. Accordingly, although I concur in Part II(B)(1) of the majority opinion, concerning the prejudgment interest award, I respectfully dissent from the remainder of that opinion.

### I. Discussion

The majority opines that:

- Judicial deference to arbitrators is so great that "judicial review" may be something of a "misnomer" and judicial review of an arbitration award under section 13–22–223(1), C.R.S.2009, involves only "specific instances of outrageous [arbitral] conduct" and "egregious departures from the parties' agreed-upon arbitration";

- Courts may not review the merits of an arbitration award, including issues of contract interpretation like that at issue here;

- Because the parties here delegated to the arbitrator the power to determine whether to award fees and she did so, the fee award is not subject to judicial review; and

- The arbitrator's award of fees under the CCPA is not properly reviewable because the arbitrator may have reasoned that the CCPA violations were egregious

or that an egregiousness showing was required only for non-statutory fees.

I disagree with each of these premises, or the assumptions underlying them.

First, the majority's statement as to the limitations of judicial review, which relies on a United States Supreme Court interpretation of the Federal Arbitration Act, *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008), is not, in my view, a correct statement of Colorado law. In Colorado, a district court may properly vacate an arbitration award when, among other things, the court finds that there was no agreement between the parties to arbitrate or the arbitrator exceeded his or her powers. § 13–22–223(1)(d)–(e). Accordingly, I do not believe that Colorado law is so stringent as to limit judicial review of arbitration awards to circumstances in which the arbitrator's conduct was outrageous or in which the arbitrator egregiously departed from the parties' agreed upon arbitration.

Second, although I agree that courts generally may not review the merits of an arbitration award, including issues of contract interpretation, interpretation of an arbitration agreement or clause is different from interpretation of a contract that is the subject of a breach of contract dispute before an arbitrator. As to the former, our supreme court has consistently held that the interpretation of an arbitration agreement is a matter of law that a reviewing court reviews de novo. *Allen v. Pacheco*, 71 P.3d 375, 378 (Colo.2003).

*Container Technology Corp. v. J. Gadsden Pty., Ltd.*, 781 P.2d 119 (Colo.App.1989), on which the majority relies, does not suggest otherwise. *Container Technology* did not involve a dispute regarding the interpretation of an arbitration provision or the scope of the arbitrator's authority thereunder. Rather, it involved construction of the contract that was at issue in the arbitration. *Id.* at 121–22. It is in that context that the division observed that the interpretation of a contract is an unreviewable merits issue. *Id.* at 121. I perceive nothing in *Container Technology*, nor am I aware of any other case, that deprives a reviewing court of the authority to interpret an arbitration agreement or to determine the scope of the arbitrator's powers.

Third, I disagree that a court's review of an arbitrator's authority is limited to deciding whether the underlying dispute was properly arbitrable. An arbitrator's powers are derived from the terms of the arbitration agreement between the parties, regardless of whether the arbitration provision is a standalone agreement or, as here, is embedded in a contract. *Magenis v. Bruner*, 187 P.3d 1222, 1224–25 (Colo.App.2008). To determine whether the arbitrator exceeded his or her authority within the meaning of section 13–22–223(1)(d), the court must determine the scope of the arbitration agreement. *Farmers Ins. Exchange v. Taylor*, 45 P.3d 759, 761 (Colo.App.2001). An arbitrator exceeds his or her authority not only when the arbitrator decides an issue that is not properly arbitrable, but also when the arbitrator refuses to apply or ignores a legal standard agreed upon by the parties for resolution of their dispute. *Giraldi v. Morrell*, 892 P.2d 422, 424 (Colo.App.1994) (in a medical malpractice case involving a child plaintiff, reviewing court rejects the plaintiff's assertion that the arbitrator applied an "experienced adult" standard of care to measure the defendant's conduct, rather than the "pediatric" standard of care agreed on in the arbitration agreement); *see also City & County of Denver v. Denver Firefighters Local No. 858*, 663 P.2d 1032, 1039–40 (Colo.1983) (when an arbitrator exceeds his or her authority by going beyond the terms of the arbitration agreement, a dissatisfied party may properly apply to the district court to vacate the award).

Applying these principles here, I disagree with the majority's conclusion that because the arbitrator indisputably had power to award fees, our inquiry is at its end. The parties did not merely agree that the arbitrator could award fees here. Rather, they agreed that the arbitrator could award fees *only* upon a showing of egregious conduct. Thus, to me, the question is not merely whether the arbitrator was empowered to award fees, which no one denies. The issue is whether the arbitrator was empowered to award fees under the CCPA. In my view, this question goes to the scope of the arbitrator's

powers, it requires interpretation of the arbitration agreement, and, thus, it is an issue for the reviewing court to determine de novo.

In this regard, I believe that *Magenis,* 187 P.3d at 1224–26, is indistinguishable from this case. In *Magenis,* the parties agreed that the arbitrator "shall award fees and expenses (including reasonable attorneys' fees) to the prevailing party." *Id.* at 1223. The plaintiff prevailed in the underlying dispute and sought an award of fees. The arbitrator stated that although he had "considered the matter of attorney's fees," he "declined" to award them, offering several reasons for his decision. *Id.* at 1224. The plaintiff appealed, and a division of this court reversed. *Id.* at 1225–26.

The division began its analysis by noting that the district court "was required to determine de novo whether the arbitrator's refusal to award attorney fees to plaintiff as the prevailing party was a determination beyond the scope of the parties' arbitration agreement." *Id.* at 1225. The division then rejected the defendants' argument that even if the district court erred by deferring to the arbitrator's determination of the scope of the arbitration agreement, the parties nevertheless gave the arbitrator discretion to deny an award of fees. *Id.* The division concluded that under the plain terms of the arbitration clause at issue, the only power that the arbitrator had was to determine the reasonable amount of fees to be awarded. *Id.* at 1225–26. The division thus rejected the defendants' argument that the arbitrator had simply decided that the reasonable attorney fees were $0.00. *Id.*

*Magenis* supports my view that the dispute here relates to the scope of the arbitrator's power and that it is for the court to construe the limits of that power. Just as the district court in *Magenis* was required to determine de novo whether the arbitrator's refusal to award fees to the plaintiff was a determination beyond the scope of the parties' arbitration agreement, we are required here to determine de novo whether the arbitrator's award of fees under the CCPA was a determination beyond the scope of the parties' arbitration agreement.

Conversely, in my view, *Magenis* is inconsistent with the majority's analysis here. Indeed, applying the majority's analysis to the facts in *Magenis* would have required the division there to reach a different result. Specifically, under the majority's rationale, the *Magenis* division should have gone no further than to decide that the arbitrator was empowered to decide the fees question. Anything beyond that would have been a matter of contract interpretation (e.g., the arbitrator's determination that the arbitration clause gave him discretion to award fees or to choose to award $0.00) and would not have been reviewable.

For these reasons, I would conclude that the issue presented here is one that goes to the scope of the arbitrator's authority. I would then hold that the fees provision was clear and unambiguous and authorized the arbitrator to award fees only upon a showing of egregious conduct, regardless of whether fees were being awarded pursuant to statute, rule, or other provision of law. Thus, I would conclude that the award of fees under the CCPA was erroneous, absent a showing of egregious conduct.

Finally, although I agree with the majority that absent a provision in the arbitration agreement requiring the arbitrator to make findings, the arbitrator could properly have awarded fees with no explanation, it does not necessarily follow that the arbitration award is likewise unreviewable because the arbitrator may have "said too much." The majority states that the arbitrator might have decided, as a matter of contract interpretation, that an egregiousness showing was required only for non-statutory fees, which interpretation would be unreviewable. The majority further states that the arbitrator might have decided to award fees pursuant to the CCPA because the CCPA violations here were egregious in fact or as a matter of law. I disagree with both points.

For the reasons noted above, I believe that the first statement is inconsistent with settled Colorado case law holding that interpretation of an arbitration agreement is an issue of law that the court reviews de novo. *See, e.g., Allen,* 71 P.3d at 378.

The second statement is inconsistent with the record. Here, the homeowners expressly argued that the arbitrator could award fees under the CCPA without a showing of egregious conduct by Village Homes. Village Homes countered that the arbitrator could not do so, because she was only empowered to award fees upon a showing of egregious conduct. Although the homeowners ultimately asked the arbitrator to determine whether they had shown egregious conduct, the arbitrator apparently agreed with the homeowners' initial argument and awarded fees under the CCPA without addressing the question of whether the homeowners had shown that Village Homes' conduct was egregious.

Unlike the majority, I do not believe that these facts allow us to conclude that the arbitrator "might" have determined that the homeowners had established that Village Homes' conduct was egregious. If anything, these facts compel the opposite conclusion. The parties asked the arbitrator to conclude either that fees could be awarded under the CCPA without a showing of egregious conduct or that fees could be awarded only upon a showing of egregious conduct. The arbitrator appears to have agreed with the former and rejected the latter.

*Barrett v. Investment Management Consultants, Ltd.*, 190 P.3d 800 (Colo.App.2008), on which the majority relies, is distinguishable from the present case. In *Barrett*, the arbitration clause did not address whether the arbitrator was empowered to award fees. *Id.* at 801. The clause provided, however, that the dispute was to be determined in accordance with federal law, including the Federal Arbitration Act (FAA), which specifically provided for an award of fees to the prevailing party. *Id.* Construing the arbitration clause de novo, the division determined that fees were properly awarded because the FAA, which governed the arbitration proceedings, provided for such an award. *Id.* at 803. This was true notwithstanding the fact that the arbitrator mistakenly cited the Uniform Arbitration Act, rather than the FAA, in making the fee award. *Id.* at 802–03.

Unlike here, nothing in the arbitrator's award in *Barrett* was inconsistent with the parties' arbitration provision. To the contrary, the award in *Barrett* was consistent with the express terms of the arbitration provision. Accordingly, the *Barrett* division did not confront the issue presented here, namely, whether we can presume that the arbitrator acted within her powers when she issued an award that appeared facially inconsistent with them.

Notwithstanding the foregoing, I do not believe that the record before us is sufficient to allow me to conclude, as Village Homes requests, that the arbitrator found that its conduct was not egregious. Accordingly, in the particular circumstances presented here, I would remand this case to the arbitrator to clarify her findings.

Colorado courts have remanded arbitration awards to arbitrators when an award was ambiguous and in need of clarification. *See Osborn v. Packard*, 117 P.3d 77, 83 (Colo. App.2004). Although no Colorado appellate court appears to have squarely addressed the question of whether a remand is appropriate when the award is not ambiguous on its face but when the arbitrator arguably did not resolve an issue that was properly submitted for determination, courts in other jurisdictions have held that a remand is proper in these circumstances. *See, e.g., La Vale Plaza, Inc. v. R.S. Noonan, Inc.*, 378 F.2d 569, 573 (3d Cir.1967) ("[W]here the award does not adjudicate an issue which has been submitted, then as to such issue the arbitrator has not exhausted his function and it remains open to him for subsequent determination."); *United Paperworkers Int'l Union v. White Pigeon Paper Co.*, 815 F.Supp. 1061, 1065 (W.D.Mich.1993) ("[A]n issue may be remanded to the arbitrator if the arbitrator failed to decide an issue.").

Courts in other jurisdictions have also determined that a remand is appropriate when it is unclear to the reviewing court whether or not the arbitrator has resolved a certain issue. *See, e.g., Galt v. Libbey–Owens–Ford Glass Co.*, 397 F.2d 439, 442 (7th Cir.1968) (the district court properly remanded the case for additional explanation rather than guessing at the meaning of the arbitrator's award); *La Vale Plaza, Inc.*, 378 F.2d at 573 ("Where the award, although seemingly com-

plete, leaves doubt whether the submission has been fully executed, an ambiguity arises which the arbitrator is entitled to clarify.").

Finally, at least one court has remanded a case to an arbitration panel when the panel's findings were insufficient to allow the court to determine whether an award of attorney fees was warranted or not. *See Moser v. Barron Chase Securities, Inc.*, 783 So.2d 231, 236–37 (Fla.2001) (where arbitrators found for claimants who had sued on several claims, only one of which provided for an award of fees, but the arbitrators failed to indicate the claims on which they were ruling, a remand to the arbitrators to clarify the basis for their award was appropriate, so that the circuit court, which was tasked with deciding the fees issue, could make its determination).

The foregoing authorities persuade me that a remand would be appropriate on the unique facts of this case. "Only the arbitrator absolutely knows what was intended in the award. And, it is the arbitrator's intent, not the court's, for which the parties bargained." *Sooper Credit Union v. Sholar Group Architects, P.C.*, 113 P.3d 768, 772 (Colo.2005).

## II. Conclusion

In its opinion, the majority recites the benefits of arbitration and the adverse consequences of judicial review, particularly in terms of cost and delay, in support of the limitations on judicial review that it adopts today. I agree that arbitration is favored and that judicial review of arbitration awards is—and should be—limited. These principles must give way, however, when, as here, an arbitrator exceeds the powers granted him or her in an arbitration agreement. Moreover, unlike the majority, I do not believe that judicial review of arbitration awards is so restrictive as to prevent a court from vacating an arbitration award when, as here, the arbitrator refuses to apply or ignores a legal standard agreed upon by the parties for resolution of their dispute. In my view, such a rule undermines parties' right to contract and renders "judicial review" of arbitration awards the "misnomer" that the majority perceives it to be, because any dispute over an arbitrator's application of a legal standard agreed to by the parties could readily be viewed as a matter of contract interpretation that is not subject to review.

For these reasons, I concur in Part II(B)(1) and dissent from the remainder of the majority opinion.