**Todd NASCA, Plaintiff–Appellee,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois corporation, Defendant–Appellant,**

**and**

**Zupkus & Ayd, P.C., a Colorado professional corporation; Robert Zupkus, individually; and Patricia M. Ayd, individually, Defendants.**

No. 99CA0510.

Colorado Court of Appeals, Div. I.

April 13, 2000.

Certiorari Denied Oct. 23, 2000.*

* Justice MARTINEZ would grant as to the following issues: Whether when, in an arbitration proceeding, a party conceals a significant and ongoing business relationship involving the purchase of both witness/consultant and arbitral services from its appointed arbitrator, the decision of the three-person arbitration panel is procured by "corruption, fraud, or undue means" as a matter of law pursuant to section 13-22-214(1)(a)(I), 5 C.R.S. (1999). Whether the trial court must inquire into the mental processes of the arbitrators in determining whether an arbitration award was procured by "corruption, fraud, or undue means" pursuant to section 13-22-214 (1)(a)(I).

Silvern Law Offices, P.C., Steven Silvern, Thomas A. Bulger, Denver, Colorado; Lohf, Shaiman & Jacobs, P.C., Stephen E. Kapnik, Denver, Colorado; Zapiler & Associates, John P. Ferris, Denver, Colorado, for Plaintiff–Appellee.

Faegre & Benson LLP, Michael S. McCarthy, Jeanne M. Coleman, Christopher P. Beall, Denver, Colorado; Seaman and Giometti, P.C., Thomas J. Seaman, Gregory R. Giometti, Englewood, Colorado, for Defendant–Appellant.

No Appearance for Defendants Zupkus & Ayd, P.C., Robert Zupkus, and Patricia M. Ayd.

Wilcox & Ogden, P.C., Ralph Ogden, Denver, Colorado, Amicus Curiae for Colorado Trial Lawyers Association.

Opinion by Judge RULAND.

In an action to vacate an arbitration award, defendant, State Farm Mutual Automobile Insurance Company (State Farm), appeals from an order granting partial summary judgment in favor of plaintiff, Todd Nasca. We affirm in part, reverse in part, and remand with directions.

Plaintiff was injured in an automobile accident and settled his personal injury claim with the insurance carrier for the other driver. Plaintiff then requested additional compensation from his own insurer, State Farm. This claim was based upon the under-insured/uninsured motorist coverage provisions of the policy. The parties could not agree upon the amount of compensation due plaintiff, and thus plaintiff's claim was submitted to arbitration pursuant to the provisions of the insurance policy.

The policy required that each party appoint an "impartial" arbitrator. The policy then required that the two party-appointed arbitrators select a third. Following a hearing, the arbitration panel entered a unanimous award rejecting plaintiff's claim.

Four years after the arbitration award was entered, plaintiff discovered that State Farm had previously established an ongoing business relationship with defendant Patricia M. Ayd, the arbitrator it appointed. Specifically, plaintiff discovered that the arbitrator had acted as a paid expert witness for State Farm in an unrelated case during the pendency of his arbitration. Plaintiff also learned that prior to plaintiff's arbitration, Ayd's partner defendant Robert Zupkus, was a paid expert witness for State Farm on at least 10 occasions.

Additionally, the record reflects that both during and prior to plaintiff's arbitration, State Farm appointed Ayd as its arbitrator in 37 claims, and that it appointed her partner to arbitrate at least 35 claims. As a result of these transactions, State Farm paid the arbitrator's law firm approximately $70,000 for both expert and arbitration services during the year immediately preceding plaintiff's arbitration.

Based upon this information, plaintiff filed his complaint in the trial court seeking to vacate the arbitration award because of Ayd's failure to disclose the business relationship with State Farm. Plaintiff's case was later consolidated with similar claims brought by other plaintiffs. Afterwards, the trial court granted plaintiff's motion for partial summary judgment on his claim and vacated the arbitration award. State Farm brings this appeal pursuant to § 13–22–221(e), C.R.S.1999.

In resolving the issues before us, we must independently review the record and evaluate the motion for summary judgment in the same manner as the trial court. *See Aspen Wilderness Workshop, Inc. v. Colorado Water Conservation Board,* 901 P.2d 1251 (Colo. 1995). As pertinent here, entry of summary judgment was proper only if there were no disputed issues of material fact to be resolved, and if the only issues for decision were legal questions based upon undisputed facts. *See Kaiser Foundation Health Plan v. Sharp,* 741 P.2d 714 (Colo.1987).

With reference to the arbitration award itself, the grounds for the court to set the decision aside are specified in the Uniform Arbitration Act (Act). *See* § 13–22–201, *et seq.,* C.R.S.1999; *Container Technology Corp. v. J. Gadsden Pty., Ltd.,* 781 P.2d 119 (Colo.App.1989). Statutory grounds that require an arbitration award to be vacated include that:

(I) The award was procured by corruption, fraud, or other undue means;

(II) There was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party. . . .

Section 13–22–214(1)(a)(I) and (II), C.R.S. 1999.

The time for applying to the court to vacate an award is specified in the Act.

An application under this section shall be made within thirty days after delivery of a copy of the award to the applicant; except that, if predicated upon corruption, fraud, or other undue means, it shall be made within thirty days after such grounds are known or should have been known.

Section 13–22–214(2), C.R.S.1999.

The parties do not dispute that the "corruption, fraud, or other undue means" predicate referred to is that provided at § 13–22–214(1)(a)(I). We agree with this construction of the statute.

## I.

■ State Farm contends that, even assuming that Ayd had a duty to disclose her business relationship with State Farm and that the failure to do so violates § 13–22–214(1)(a)(I), entry of summary judgment for plaintiff was error. Specifically, State Farm argues that plaintiff failed to establish, for summary judgment purposes, the requisite causal connection between the undisclosed business relationship with State Farm and its influence on the arbitration award. We agree.

■ Plaintiff bears the burden of establishing grounds to vacate the award. As pertinent here, the Uniform Act requires a party to establish that the award was "procured by" undue means. The plain meaning of this provision is that there must be a causal relation between the improper conduct and the arbitration award. *See A.G. Edwards & Sons, Inc. v. McCollough,* 967 F.2d 1401 (9th Cir.1992)(the statute requires a showing that the undue means caused the award to be given); *Forsythe International, S.A. v. Gibbs Oil Co.,* 915 F.2d 1017 (5th Cir.1990)(there must be "nexus" between the misconduct and the arbitrator's decision). To interpret the statute otherwise would eliminate the requirement that the award be procured by one of the prohibited methods. *PaineWebber Group, Inc. v. Zinsmeyer Trusts Partnership,* 187 F.3d 988 (8th Cir. 1999).

Here, the affidavits of the other two arbitrators in plaintiff's case are uncontroverted. The affidavit of the arbitrator appointed by plaintiff states that, based upon his observation and knowledge, Ayd was "fair and impartial."

The affidavit submitted by the arbitrator selected by plaintiff's nominee and State Farm's nominee states that he did not observe any "undue influence on the part of Patricia Ayd in deciding the arbitration," and that she served as "an arbitrator in a fair and impartial manner." Further, the affidavit recites that "as the neutral arbitrator on the panel, I would have decided to award zero damages regardless of the position taken by Ms. Ayd or [plaintiff's designated arbitrator]."

■ Contrary to plaintiff's contention, we conclude that the affidavits may be properly considered on the causation issue. Unlike in *Container Technology Corp. v. J. Gadsden Pty. Ltd., supra,* the purpose of the affidavits was not to establish the thought process of the panel members.

Thus, we view *Twin Lakes Reservoir & Canal Co. v. Platt Rogers, Inc.,* 112 Colo. 155, 147 P.2d 828 (1944), as dispositive of plaintiff's argument. In that case, our supreme court addressed a challenge to an arbitration award based upon *ex parte* communications between the arbitrators and certain experts and other persons. The arbitrators testified in the proceeding and the argument was made on appeal that the trial court erred in admitting this testimony. The court stated:

> Under our view, the questioned evidence was not intended to vary, or add to, the terms of the award nor accomplish such; rather, it was directed to what took place before the arbitrators, what was in controversy, and what matters entered into the decision, and so was properly received.

*Twin Lakes Reservoir & Canal Co. v. Platt Rogers, Inc., supra,* 112 Colo. at 170–71, 147 P.2d at 836. The quoted affidavits serve a similar function here. Accordingly, we conclude that, for summary judgment purposes, plaintiff has failed to establish that the award was procured in violation of the statute.

## II.

Because the following contentions have been thoroughly briefed by the parties and are relevant to resolution of this consolidated action, we address them here for purposes of judicial economy.

■ State Farm contends that the trial court erred in vacating the arbitration award on the grounds that the award was "procured by corruption, fraud, or other undue means" as provided in § 13–22–214(1)(a)(I). In support of this contention, State Farm argues that there is a genuine issue of material fact on this record relative to whether Ayd was obligated to make the disclosures in question.

State Farm relies upon affidavits indicating that it is not customary to disclose that one has previously served as an arbitrator for the same party. However, here, the number of appointments as an arbitrator, the employment of Ayd and another member of her law firm as expert witnesses, and the significant payments to the firm for these services combine to establish a substantial relationship between the law firm and State Farm. Therefore, we conclude that, under the circumstances of this case, there was a duty on Ayd's part to disclose the extent of her business relationship with State Farm.

Initially, we note that whether a duty exists is a question of law for the court. *See Observatory Corp. v. Daly*, 780 P.2d 462 (Colo.1989). Further, our supreme court has noted that arbitrators must maintain the highest degree of impartiality when deciding disputes "without the slightest degree of friendship or favor toward either party." *See Noffsinger v. Thompson*, 98 Colo. 154, 156, 54 P.2d 683, 683 (1936). In this context, the United States Supreme Court, in applying the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* (1994), has held that an arbitrator has a duty to disclose to the parties any dealings that might create an impression of possible bias such as a close business relationship. *See Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968). Similarly, a division of this court has concluded that the obligation of an arbitrator to avoid "evident partiality" under § 13–22–214(1)(a)(II) requires disclosure of any relationship that would persuade a reasonable person that the arbitrator is likely to be partial to one side in a dispute. *McNaughton & Rodgers v. Besser*, 932 P.2d 819 (Colo.App.1996).

Further, as noted, each party agreed to appoint an "impartial arbiter." And, even if we assume, as State Farm contends, that it is unnecessary for an arbitrator to disclose prior services as an appointed arbitrator for the same party, we are unable to reach the same conclusion in this case. Thus, we hold that where the attorneys in the arbitrator's law firm have a substantial business relationship with an insurance carrier including service as expert witnesses, there is a duty to disclose this relationship to the parties in an arbitration proceeding.

### III.

Nevertheless, State Farm contends that, before the award may be set aside on grounds of failure to disclose under § 13–22–214(1)(a)(I), the record must demonstrate by clear and convincing evidence that Ayd intended to commit fraud in the proceeding or some similar unlawful conduct. State Farm further contends that the record here totally fails to support such a finding.

In the alternative, State Farm argues that any claim here to vacate the award must be based upon a failure to disclose under the "evident partiality" section of the statute. State Farm then points out that such an action is time-barred because it was not filed within 30 days after entry of the award. We disagree with both contentions.

Initially, we note that the grounds to set aside an award are not limited to fraud, but also include "other undue means." Further, as indicated above, the 30–day time limit does not commence until discovery of the impropriety.

The Colorado appellate courts have not had occasion previously to interpret the provision for setting aside awards "procured by corruption, fraud, or other undue means." We must first resort to established principles of statutory construction. And, our primary task in construing the statute is to ascertain and give effect to legislative intent. *See State v. Nieto*, 993 P.2d 493 (Colo.2000).

To determine that intent, we again look to the plain language of the statute and construe the words according to their plain and ordinary meaning. *See Golden Animal Hospital v. Horton*, 897 P.2d 833 (Colo.1995). If the statutory language is clear and unambiguous, there is no need to resort to other interpretive rules for statutory construction. *See Jones v. Cox*, 828 P.2d 218 (Colo.1992).

The term "undue" is defined as "inappropriate; unjustifiable; improper." *Random House Webster's Unabridged Dictionary* 2066 (2d ed.1998). The term "means" is usually defined as "an agency, instrument, or method used to attain an end." *Id.* at 1191. Thus, the ordinary meaning of these terms suggests some type of impropriety in the arbitration process. In our view, the terms are broad enough to include a party-appointed arbitrator's non-disclosure of a substantial business relationship such as the relationship involved here.

We find additional support for our interpretation from decisions in other jurisdictions that have adopted the Uniform Arbitration Act. *See Compton v. Lemon Ranches, Ltd.*, 972 P.2d 1078 (Colo.App.1999). At least two

courts have adopted the following definition of "undue means:"

'Undue means' goes beyond the mere inappropriate or inadequate nature of the evidence and refers to some aspect of the arbitrator's decision or decisionmaking process which was obtained in some manner which was unfair and beyond the normal process contemplated by the arbitration act.

*Wojdak v. Greater Philadelphia Cablevision, Inc.,* 550 Pa. 474, 489, 707 A.2d 214, 221 (1998)(quoting *Seither & Cherry Co. v. Illinois Bank Building Corp.,* 95 Ill.App.3d 191, 197, 419 N.E.2d 940, 945, 50 Ill.Dec. 672, 677 (1981)). Another court has defined "undue means" in the context of *ex parte* communications between an arbitrator and a party as "inappropriate, unjustified or improper methods of procuring an arbitration award." *Manitowoc v. Manitowoc Police Department,* 70 Wis.2d 1006, 1019, 236 N.W.2d 231, 238 (1975).

Still other courts, while not providing a precise definition of the terms, have acknowledged that an arbitrator's undisclosed relationship with a party may constitute "undue means." *See Sorren v. Kumble,* 578 So.2d 836 (Fla.App.1991)(undue means refers to undisclosed relationship between arbitrator and party); *see also Safeco Insurance Co. v. Stariha,* 346 N.W.2d 663 (Minn.App.1984)(relationship between neutral arbitrator and party too remote in time and circumstance to the issues arbitrated to violate "undue means" or "evident partiality" provisions of statute).

Finally, to interpret the statute as State Farm suggests would be to deny relief to a claimant based on his inability to discover information that was wrongfully withheld and which would require disclosure under the "evident partiality" test. Such an interpretation of the statute would reach an absurd result. *See Petition of S.O.,* 795 P.2d 254 (Colo.1990)(in interpreting statute, court presumes that legislature intended just and reasonable result).

That part of the partial summary judgment determining that disclosure of the business relationship between the parties should have been disclosed is affirmed. That part of the partial summary judgment vacating the award is reversed, and the cause is remanded for further proceedings consistent with the views expressed in this opinion.

Judge MARQUEZ and Judge NIETO concur.