**BFN–GREELEY, LLC, a Colorado limited liability company; BFN–Loveland, LLC, a Colorado limited liability company; and John S. Buckley, Jr., Plaintiffs–Appellants,**

v.

**ADAIR GROUP, INC., a Colorado corporation, Defendant–Appellee.**

No. 04CA1824.

Colorado Court of Appeals, Div. I.

April 6, 2006.

Certiorari Denied Aug. 28, 2006.

Madden & Madden, John W. Madden, III, John W. Madden, IV, Denver, Colorado, for Plaintiffs–Appellants.

The Hustead Law Firm, Patrick Q. Hustead, John D. Mereness, Denver, Colorado; Fairfield & Woods, P.C., John M. Tanner, Emanuel N. Anton, Denver, Colorado, for Defendant–Appellee.

Smart & Associates P.C., Thomas D. Smart, Jr., Denver, Colorado, for Amicus Curiae TRI Acceptance Corporation, f/k/a TRI Capital Corporation.

ROMÁN, J.

Plaintiffs, BFN–Greeley, LLC, BFN–Loveland, LLC, and John S. Buckley, Jr., (collectively, BFN), appeal the district court's order denying their motion to vacate an arbitration award and confirming the award in favor of Adair Group, Inc. (Adair). We affirm in part, vacate in part, and remand.

Adair constructed two apartment complexes for BFN in Greeley and Loveland. The construction agreement consisted of the signed contract (Contract) and, by incorporation, the American Institute of Architects General Conditions of the Contract for Construction (AIA Conditions) and the American Arbitration Association Construction Industry Dispute Resolution Procedures (AAA Procedures).

Near the end of construction, BFN withheld money from Adair. Adair then initiated arbitration with the American Arbitration Association (AAA) under the AAA Procedures, and BFN filed counterclaims.

After hearing nineteen days of testimony over a seven-month period, the arbitrators issued an Interim Award on December 10, 2003, in which they awarded Adair a net amount of over $1.3 million. They also directed, "This Interim Award shall remain in full force and effect until such time [as] a Final Award is issued. The Panel retains limited jurisdiction in this matter as set forth in paragraphs 21 through 25 above."

Paragraphs 21 through 25 established an escrow account to ensure payment of subcontractor liens and stated the arbitrators were retaining limited jurisdiction until June 1, 2004, to resolve disputes concerning the escrow account. One provision also stated that after the escrow account had accomplished its purpose, the arbitrators would issue a final award terminating their jurisdiction.

On January 8, 2004, BFN moved to vacate the Interim Award in the district court, and Adair moved to confirm it.

After learning of BFN's motion to vacate in the district court, and concluding the escrow account had not achieved its purpose, the arbitrators issued a Final Award in which they deleted the escrow provisions and terminated their jurisdiction. In all other respects, the Final Award was identical to the Interim Award.

Meanwhile, in response to the competing motions to vacate and confirm, the district court scheduled an evidentiary hearing for August 16, 2004, and allowed BFN to take the deposition of a subcontractor. However, two weeks before the hearing, without notice to the parties, the court denied BFN's motion to vacate and confirmed the award in favor of Adair.

BFN now appeals, contending (1) the arbitrators exceeded their authority, (2) the award was procured by fraud, (3) an evidentiary hearing was required, and (4) the district court abused its discretion by entering judgment without giving BFN an opportunity to present all its evidence.

## I.

■ BFN first contends the district court erred by not vacating the award on the basis that the arbitrators exceeded their authority. Specifically, BFN argues the arbitrators lacked authority (1) to decide post-construction claims relating to time extensions and change orders without prior written permission from the United States Department of Housing and Urban Development (HUD) and TRI Acceptance Corporation (TRI), and (2) to issue a final award after an interim award. We are not persuaded.

### A.

■ Colorado encourages the settlement of disputes through arbitration. *See* Uni-

form Arbitration Act of 1975, Colo. Sess. Laws 1975, ch. 154, § 13–22–201, et seq., at 573–78 (now recodified with amendments as the Colorado Revised Uniform Arbitration Act of 2004, § 13–22–201, et seq., C.R.S. 2005); *Judd Constr. Co. v. Evans Joint Venture*, 642 P.2d 922, 924 (Colo.1982); *Breaker v. Corrosion Control Corp.*, 23 P.3d 1278 (Colo.App.2001). To facilitate confidence in the finality of arbitration awards and discourage piecemeal litigation, the statute strictly limits the role of the courts in reviewing awards, and a party challenging an award bears a heavy burden. *Farmers Ins. Exch. v. Taylor*, 45 P.3d 759, 761 (Colo.App.2001). An arbitrator is the final judge of both fact and law, and a court may not review the merits of an award without statutory grounds to vacate or modify. *Coors Brewing Co. v. Cabo*, 114 P.3d 60, 64 (Colo.App.2004); *Farmers Ins. Exch., supra*, 45 P.3d at 761.

### B.

BFN asserts that the arbitrators lacked authority to decide post-construction claims relating to time extensions and change orders without prior written permission from HUD and TRI. We disagree.

■ A court must vacate an award when the arbitrators have exceeded their authority, Colo. Sess. Laws 1975, ch. 154, § 13–22–214(1)(a)(III) at 576 (now recodified with amendments as § 13–22–223(1)(d), C.R.S. 2005), and arbitrators do so only when their award goes beyond the scope of the parties' arbitration agreement. *Coors Brewing Co., supra.*

■ To determine the scope of an arbitration agreement, we use standard principles of contract interpretation. Looking to the plain language of the agreement, we interpret it in a manner that best effectuates the intent of the parties. Because of the policy favoring arbitration, we construe any ambiguities in favor of arbitration, and when an arbitration clause is broad or unrestricted, the strong presumption favoring arbitration applies with even greater force. The interpretation of an arbitration agreement is a matter of law we review de novo. *Allen v. Pacheco*, 71 P.3d 375, 378 (Colo.2003).

Here, the arbitration agreement is contained in the AIA Conditions, which broadly provide that "[a]ny claim arising out of or related to the Contract ... shall ... be subject to arbitration."

We acknowledge the Contract states that (1) its provisions take precedence over inconsistent provisions of the AIA Conditions; (2) the "time by which the work shall be completed may be extended in accordance with the terms of the [AIA Conditions] only with the prior written approval of [HUD]"; and (3) "[c]hanges by altering or adding to the work ... may be effected only with the prior written approval of [TRI] and [HUD]."

However, because the AIA Conditions broadly granted the arbitrators authority to decide "any claims arising out of or related to the Contract," it was the arbitrators' responsibility to decide post-construction claims relating to time extensions and change orders and to award damages accordingly. *See R.P.T., Inc. v. Innovative Commc'ns, Inc.*, 917 P.2d 340, 343 (Colo.App.1996)(arbitration provision's broad language imposed duty on parties to arbitrate all disputes regarding the contract). Moreover, even if the parties' arbitration agreement were ambiguous, any ambiguity would be resolved in favor of arbitration. *See Allen, supra*, 71 P.3d at 378.

Accordingly, we conclude the arbitrators had authority to decide post-construction claims relating to time extensions and change orders.

### C.

■ We also disagree with BFN's contention that the arbitrators exceeded their authority by issuing a final award after an interim award.

■ Recourse to arbitration administered by institutions such as the AAA has become the prevailing method of commercial arbitration in the United States. *Columbine Valley Constr. Co. v. Bd. of Dirs.*, 626 P.2d 686, 691; *Domke on Commercial Arbitration* § 24:2 (3d ed.2005). When parties agree to arbitrate according to the rules of a particular institution, those rules are incorporated by reference into the parties' arbitration agreement. *See Columbine Valley, supra*, 626 P.2d at 691 (AAA Construction Industry Rules); *Carson v. PaineWebber, Inc.*, 62 P.3d

996, 997 (Colo.App.2002)(National Association of Securities Dealers Code of Arbitration Procedure).

Here, it is undisputed the parties' arbitration agreement incorporated by reference the AAA Procedures. Rule 37 of the AAA Procedures states that (1) "the arbitrator may take whatever interim measures he or she deems necessary," and (2) "[s]uch interim measures may be taken in the form of an interim award." Rule 46 further states that "[i]n addition to the final award, the arbitrator may make other decisions, including interim, interlocutory, or partial rulings, orders, and awards."

Accordingly, under the AAA Procedures, the arbitrators had the authority to issue an interim award followed by a final award. *See Wayland Lum Constr., Inc. v. Kaneshige*, 90 Hawai'i 417, 978 P.2d 855 (1999)("draft award" was not a final award depriving arbitrator of authority). Therefore, because the Interim Award was not a final award, the arbitrators acted within their authority when they eliminated the escrow account provisions. *See R.P.T., Inc. v. Innovative Commc'ns, Inc., supra*, 917 P.2d at 343 (Colorado law affords arbitrators great flexibility in fashioning appropriate remedies).

Accordingly, we conclude the arbitrators had authority to issue an interim award and then a final award.

## II.

■ BFN next contends the award was procured by fraud because Adair's owner testified during the arbitration that his company had never been terminated from a previous job, even though Adair's termination on another job was then being disputed in another arbitration. We disagree.

A court must vacate an arbitration award that was "procured by corruption, fraud, or other undue means." Colo. Sess. Laws 1975, ch. 154, § 13–22–214(1)(a)(I) at 576 (now recodified with amendments as § 13–22–223(1)(a), C.R.S.2005). The plain meaning of "procured by" is a causal connection between the improper conduct and the award. *Nasca v. State Farm Mut. Auto. Ins. Co.*, 12 P.3d 346, 349 (Colo.App.2000).

Here, the alleged fraudulent testimony of Adair's owner could not have "procured" the award because the fact of Adair's termination on the other project was brought to the attention of the arbitrators well before they issued the Interim Award. Accordingly, the district court properly denied this fraud claim.

## III.

■ BFN also contends the district court erred by not conducting an evidentiary hearing on its motion to vacate. We disagree.

C.R.C.P. 1(a) states, "These rules govern the procedure ... in all actions, suits and proceedings of a civil nature ... and in all special statutory proceedings, with the exceptions stated in Rule 81. They shall be liberally construed to secure the just, speedy, and inexpensive determination of every action."

C.R.C.P. 81(a), in turn, states, "These rules do not govern procedure and practice in any special statutory proceeding insofar as they are inconsistent or in conflict with the procedure and practice provided by the applicable statute."

The Uniform Arbitration Act provides for a special statutory proceeding, and sets out in precise detail the rules that apply to confirmation of arbitration awards and the methods by which parties may request courts to vacate or modify such awards. *Sportsman's Quikstop I, Ltd. v. Didonato*, 32 P.3d 633, 634 (Colo.App.2001); *see also Superior Constr. Co. v. Bentley*, 104 P.3d 331, 334 (Colo.App.2004)(C.R.C.P.60(b) is not a proper vehicle to challenge the merits of an arbitration award).

The purpose of the arbitration act is to "make the arbitration process effective, provide necessary safeguards, and provide an efficient procedure when judicial assistance is necessary." Colo. Sess. Laws 1975, ch. 154, § 13–22–202 at 573. As relevant here, Colo. Sess. Law 1975, ch. 154, § 13–22–218 at 577 (now recodified with amendments as § 13–22–205(1), C.R.S.2005) ), provides that "an application to the court under [the act] shall be by *motion* and shall be heard in the manner and upon the notice provided by law or rule of court for the making and hearing of *motions* " (emphasis added).

■ We note that a motion to vacate an arbitration award under the Federal Arbitration Act, 9 U.S.C. § 6, is treated procedurally in the manner of motions. *Health Servs. Mgmt. Corp. v. Hughes,* 975 F.2d 1253, 1258 (7th Cir.1992); *Domke, supra,* § 40:2 (under the Federal Arbitration Act, petitions to confirm, vacate, modify, or correct arbitration awards are to be made and heard in the same manner as motions after the initial complaint is filed). Interpretations of federal rules are persuasive authority as to identical Colorado rule counterparts. *Luttgen v. Fischer,* 107 P.3d 1152, 1156 (Colo.App.2005).

Further, C.R.C.P. 121 § 1–15(4), which governs motions practice in district courts, states as relevant here:

> If possible, motions shall be determined promptly upon the written motion and briefs submitted. However, the court may order oral argument or an evidentiary hearing, or if the request for oral argument or an evidentiary hearing is requested in a motion, or any brief, oral argument may be allowed by the court at its discretion.

*See also In re Marriage of Eggert,* 53 P.3d 794, 796 (Colo.App.2002)(noting that because the Uniform Arbitration Act does not require a hearing, a district court has discretion whether to grant one); *Nasca, supra* (district court exercised discretion in considering case under motion for summary judgment).

It would defeat the purpose of arbitration if a reviewing court were obligated to give the parties all the due process owed under the rules of civil procedure. Due process in this context does not require a hearing. *See In re Marriage of Eggert, supra,* 53 P.3d at 796. Moreover, written motions practice affords parties adequate notice and a reasonable opportunity to be heard. *Osborn v. Packard,* 117 P.3d 77 (Colo.App.2004). If it were otherwise, the ostensible purpose for resort to arbitration, avoidance of litigation, would be frustrated.

Accordingly, we conclude it is within the district court's discretion to conduct an evidentiary hearing or rule on the submitted motions.

## IV.

■ Finally, BFN contends the district court abused its discretion by denying its fraud claim relating to vinyl siding and waterproofing without providing it an opportunity to present all its evidence. In particular, BFN claims Adair presented fraudulent testimony from a subcontractor on vinyl siding and waterproofing issues, and that it can establish the fraud through the deposition testimony of the subcontractor. We agree.

When a party moves to vacate an arbitration award, the district court is under an obligation to scan the record to see whether it supports the moving party's contention. *See Health Servs. Mgmt. Corp., supra,* 975 F.2d at 1253. We have reviewed the record and agree with the district court that fraud has not been established. In this case, however, our analysis does not end here.

Because a motion to vacate is treated as any other motion, it is incumbent on the moving party to provide the court with all relevant evidence in support of its motion to vacate. However, it is important for a district court to give parties notice of the changed status of a case so they have a reasonable opportunity to present all pertinent evidence before the court rules. *Cf. Horne Eng'g Servs., Inc. v. Kaiser–Hill Co.,* 72 P.3d 451, 453 (Colo.App.2003)(district court must give the parties notice of the motion's changed status from motion to dismiss to motion for summary judgment and a reasonable opportunity to present all pertinent materials so "no one will be taken by surprise by the conversion" (quoting 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1366, at 501–02 (2d ed.1990) ).

Here, the district court scheduled an evidentiary hearing and allowed BFN to depose a subcontractor on vinyl siding and waterproofing issues. However, two weeks before the scheduled hearing, and without notice to BFN, the court denied BFN's motion to vacate. More important, BFN did not submit a transcript of the subcontractor's deposition because the court indicated it would conduct an evidentiary hearing. By disposing of the motions without giving BFN notice of the changed status of the proceeding or a reason-

able opportunity to present supplemental evidence, the court abused its discretion. *See Osborn, supra,* 117 P.3d at 84 (a court abuses its discretion if it does not provide a reasonable opportunity for an aggrieved party to be heard).

Accordingly, with respect to BFN's claim of fraud relating to vinyl siding and waterproofing, the order is vacated, and the case remanded to the district court with instructions to allow the parties to provide supplemental evidence relating to that claim. After reviewing the evidence, the court may conduct a hearing or rule on the submitted motions. In all other respects, the order is affirmed.

Judge MÁRQUEZ and Judge DAILEY concur.