The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
November 5, 2020

## 2020COA155

**No. 19CA0608, *Peak Billing v. Mountain Sleep Diagnostics* —**

**ADR – Arbitration – Colorado Uniform Arbitration Act –**

**Vacating Award**

A division of the court of appeals considers when an arbitration award should be vacated because it was procured by fraud, corruption, or undue means, per section 13–22–223(1)(a), C.R.S. 2020, of the Colorado Revised Uniform Arbitration Act. The division adopts a three-part test widely used in federal and other state courts to determine when such an award should be vacated and holds that in this case the award should stand.

Court of Appeals No. 19CA0608
Adams County District Court No. 18CV30091
Honorable Edward C. Moss, Judge

Tara Price, d/b/a Peak Billing,

Plaintiff-Appellee,

v.

Mountain Sleep Diagnostics, Inc.,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE GROVE
Furman and Berger, JJ., concur

Announced November 5, 2020

Messner Reeves LLP, Kendra Beckwith, Darren D. Alberti, Denver, Colorado,
for Plaintiff-Appellee

Fairfield and Woods, P.C., Cecil E. Morris Jr., Denver, Colorado, for Defendant-
Appellant

¶ 1      Mountain Sleep Diagnostics, Inc. (MSD), appeals the trial court's judgment confirming an arbitration award against it and in favor of Tara Price doing business as Peak Billing (Price). Applying section 13–22–223(1)(a), C.R.S. 2020, of the Colorado Revised Uniform Arbitration Act (CRUAA), which allows a court to vacate an arbitration award procured by fraud, corruption, or undue means, we adopt the test developed by federal courts under an analogous provision of the Federal Arbitration Act (FAA) and conclude that MSD's motion failed to make an adequate showing that MSD was entitled to relief. Because the district court correctly denied MSD's motion without holding a hearing, we affirm its judgment.

## I.     Background

¶ 2      Price contracted with MSD to provide billing services for MSD and its patients. The contract automatically renewed every year unless one party notified the other of its intent to terminate at least ninety days before the renewal date. Disputes under the contract — including any involving inadequate notice of the contract's termination — were subject to binding arbitration. The arbitration clause also provided that the prevailing party in any arbitrated dispute was entitled to an award of attorney fees.

1

¶ 3     After MSD terminated the contract less than ninety days before the renewal date, Price, asserting that the untimely notice was a breach, filed a motion to compel arbitration in the district court. The court granted the motion, and the parties reached a stipulation and agreement to arbitrate.

¶ 4     After a two-day arbitration hearing, the arbitrator awarded Price $124,224 for MSD's breach of the contract plus $24,600 in attorney fees. Price then filed a motion in district court to confirm the award. MSD moved to vacate the award, alleging that, while performing billing services for MSD, Price had committed fraud by misappropriating more than $60,000 in payments meant for MSD. The trial court issued an order denying MSD's motion to vacate and granting Price's motion to confirm.

¶ 5     MSD now appeals that order, arguing that the arbitrator's award should be vacated because discoveries it made after the arbitration was complete establish by clear and convincing evidence that Price procured the arbitration award through fraud.[1]

---

[1] MSD first argues that the trial court erred by denying its motion to vacate as untimely. But the trial court denied MSD's motion on the merits; it did not question its timeliness. We therefore do not address this argument.

2

## II. Analysis

### A. Standard of Review

¶ 6    We review de novo a district court's legal conclusions on a motion to confirm or vacate an arbitration award. *Pacitto v. Prignano*, 2017 COA 101, ¶ 7. In the absence of statutory grounds to vacate an arbitration award, we must affirm the award without reviewing its merits. *PFW, Inc. v. Residences at Little Nell Dev., LLC*, 2012 COA 137, ¶ 37.

### B. Applicable Law

¶ 7    Under the CRUAA, courts can reject arbitration awards "only in limited circumstances." *Barrett v. Inv. Mgmt. Consultants, Ltd.*, 190 P.3d 800, 802 (Colo. App. 2008). These limited circumstances, listed in section 13–22–223(1), involve "specific instances of outrageous [arbitral] conduct" and "egregious departures from the parties' agreed-upon arbitration." *Treadwell v. Vill. Homes of Colo., Inc.*, 222 P.3d 398, 401 (Colo. App. 2009) (quoting *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 586 (2008)).

¶ 8    Though the merits of an arbitration award are generally unreviewable, a court "shall" vacate an arbitration award if, as relevant here, it was "procured by corruption, fraud, or other undue

means." § 13–22–223(1)(a). What exactly constitutes corruption, fraud, or undue means, however, is largely unsettled in Colorado.

### C. MSD's Motion to Vacate

¶ 9 Affidavits attached to MSD's motion to vacate the arbitration award alleged that after the arbitration was complete, MSD's Chief Operating Officer discovered suspicious activity in MSD's billing software system, and that further examination of that system revealed more than $60,000 in misappropriated payments. MSD argues that by "concealing and failing to disclose that she had been misappropriating funds" — and "by testifying falsely on several related issues" — Price procured the arbitration award by fraud.[2]

¶ 10 The district court did not decide whether Price in fact misappropriated the funds in question. Instead, it ruled that MSD's motion failed to establish that MSD could not have discovered the alleged misappropriation sooner. The undisputed facts showed that MSD had "locked out" Price's access to the billing software system on the same day that it terminated the contract, and that a full fourteen months elapsed between that termination and the date of

---

[2] MSD did not allege any impropriety on the part of the arbitrator or corruption in the arbitration process.

4

the arbitration award.  Yet, despite having ample time to review its books, MSD never raised the issue in the arbitration even though it had asserted the defense of unclean hands.  Because "[w]rongful conduct by [Price] was part of [MSD's] case," and because "[i]nformation concerning [Price's] wrongful conduct was in [MSD's] possession prior to the arbitration hearing," the district court ruled that it was too late for MSD to assert Price's alleged misappropriation as a basis for vacating the award.

### D.  Colorado Appellate Decisions

¶ 11    Only a handful of Colorado appellate cases have considered motions to vacate arbitration awards due to fraud under the CRUAA, and none has addressed the specific situation here.  In the absence of binding precedent, the district court looked in large part to cases interpreting the FAA.  While analogous federal law can be persuasive, *see Ingold v. AIMCO/Bluffs, L.L.C. Apartments*, 159 P.3d 116, 120 (Colo. 2007), we first discuss the potentially relevant Colorado cases to determine if they provide us with a useful decisional framework.

¶ 12    In *Nasca v. State Farm Mutual Automobile Insurance Co.*, 12 P.3d 346, 348 (Colo. App. 2000), the plaintiff, Nasca, moved to

vacate an arbitration award after discovering that one of the three assigned arbitrators had been on State Farm's payroll as an expert in an unrelated matter while his arbitration was pending, and that the arbitrator's law partner had been a paid expert witness for State Farm on at least ten other occasions. Because it did not disclose this relationship, Nasca argued, State Farm procured the outcome of the arbitration by undue means. A division of this court agreed that the phrase "undue means" was broad enough to encompass the "type of impropriety in the arbitration process" that Nasca alleged, and that, as a consequence, State Farm should have disclosed the nature of its relationship with the arbitrator. *Id.* at 350. But the division nonetheless affirmed the district court's order denying the motion to vacate because Nasca failed to carry his burden of establishing "a causal relation between the improper conduct and the arbitration award." *Id.* at 349.

¶ 13     *Superior Construction Company, Inc. v. Bentley*, 104 P.3d 331 (Colo. App. 2004), involved a dispute between a homeowner and a remodeling contractor. After prevailing in the arbitration, the contractor moved for confirmation of the arbitration award in the district court. *Id.* at 332. In response, the homeowner filed a

6

motion to vacate the award, alleging that the contractor "had submitted fraudulently altered evidence in the arbitration." *Id.* The trial court conducted an evidentiary hearing and, after finding that the arbitration award had been procured in part through the use of fraudulent evidence, reduced it. *Id.* A division of this court, however, concluding that "no discrete part of the award can be identified and severed," vacated the arbitrator's award in its entirety. *Id.* at 333.

¶ 14 The parties raised similar arguments in *BFN-Greeley, LLC v. Adair Group, Inc.*, 141 P.3d 937 (Colo. App. 2006). There, in another construction dispute, Adair's owner falsely testified that his company had never been terminated from a contract, when in fact that precise issue was being litigated in a separate arbitration. *Id.* at 941. Adair prevailed, but BFN argued that the award should have been overturned because the owner's testimony was fraudulent. *Id.* A division of this court affirmed the district court's conclusion that the fraudulent testimony did not procure the award "because the fact of Adair's termination on the other project was brought to the attention of the arbitrators well before they issued" the award. *Id.* Though the timing of the revelation was at issue in

7

*BFN*, the holding suggests that the fraudulent nature of the testimony *could have*, in line with the holding in *Bentley*, served as a basis for vacating the award.

¶ 15     The most recent Colorado case addressing "corruption, fraud, or other undue means" in the arbitration context is *PFW*, 2012 COA 137, ¶ 38.  In that case, a real estate purchaser arbitrated a contract dispute with a developer, resulting in an award in the developer's favor.  *Id.* at ¶ 5.  The purchaser moved to vacate the award, arguing that the developer had fraudulently concealed its failure to register with the Colorado Division of Real Estate when it executed the agreement containing the arbitration provision (which could have made the purchase contract voidable by the purchaser and unenforceable by the developer).  *Id.* at ¶ 40.  Noting the public availability of the information the buyer claimed was fraudulently concealed, a division of this court held that it was "incumbent upon [the buyer] to raise in the arbitration proceeding any claims to void the purchase agreement based on [the developer's] registration status."  *Id.* at ¶ 42.

¶ 16     As relevant to the issue central to this appeal, we glean three concepts from these cases.  First, there must be a nexus between

8

the improper conduct and the arbitration award. *Nasca*, 12 P.3d at 349; *see also* § 13–22–223(1)(a) (contemplating vacatur of an award "procured by" fraud). Second, "fraud" as a ground for vacating an arbitration award under section 13–22–223(1)(a) is not limited to process fouls (such as State Farm's failure, in *Nasca*, to disclose that it had selected an arbitrator who was on its payroll), but can also — so long as it relates to a material issue in the case — encompass perjury or the presentation of false evidence by a party during the arbitration itself. *BFN*, 141 P.3d at 941; *Bentley*, 104 P.3d at 332. And third, when it comes to unearthing and alleging fraud, both timing and diligence matter. A party who knows or should know of fraudulent conduct should promptly bring it to the arbitrator's attention, rather than trying to unwind the award by raising the issue for the first time via a motion to vacate filed in the district court. *PFW*, ¶ 42.

E. Other Federal and State Court Decisions

¶ 17 Like section 13–22–223(1)(a) of the CRUAA, the FAA permits a reviewing court to vacate an arbitration award "where the award was procured by corruption, fraud, or undue means." 9 U.S.C. § 10(a)(1). When considering a motion to vacate an arbitration

award under this provision, most federal circuit courts require the movant to

- establish the fraud;

- show that the fraud was not discoverable by exercising due diligence prior to or during the arbitration; and

- demonstrate that the fraud had a material effect on a dispositive issue in the arbitration.

*See, e.g.*, *MCI Constructors, LLC v. City of Greensboro*, 610 F.3d 849, 858 (4th Cir. 2010); *Int'l Brotherhood of Teamsters, Local 519 v. United Parcel Serv., Inc.*, 335 F.3d 497, 503 (6th Cir. 2003). Likening an arbitration award to a judgment or order of a district court, which can only be vacated by a party's motion for relief under Fed. R. Civ. P. 60(b), federal courts require a party moving to vacate an award under 9 U.S.C. § 10(a)(1) to establish the fraud by clear and convincing evidence. *See, e.g.*, *MCI Constructors*, 610 F.3d at 858.

¶ 18    States that have adopted the Uniform Arbitration Act generally apply the same three-part test and evidentiary standard. *See Low v. Minichino*, 267 P.3d 683, 690–91, 691 n.5 (Haw. Ct. App. 2011) (collecting cases); *Health Plan of Nev., Inc. v. Rainbow Med., LLC*,

100 P.3d 172, 176 n.4 (Nev. 2004) (collecting cases). "In the absence of a prima facie showing with respect to these factors, the court is not empowered to assess evidence, much less new evidence that was not timely submitted to the arbitrators, in responding to a request for vacatur." *Seattle Packaging Corp. v. Barnard*, 972 P.2d 577, 579 (Wash. Ct. App. 1999).

F.    The Federal Test

¶ 19    While none of the Colorado cases that we have discussed explicitly adopted the federal approach, they have, collectively, either explicitly or implicitly applied each of its elements to motions filed under section 13–22–223(1)(a). *See Nasca*, 12 P.3d at 349 (requiring moving party to establish the improper conduct and show nexus); *PFW*, ¶ 42 (requiring moving party to have exercised diligence).[3]  Thus, the federal test is entirely consistent with existing Colorado case law.

---

[3] Similarly, the district court focused on whether "failing to disclose adverse facts" was enough to vacate the award, and whether it could vacate the award when "the information was available prior to the arbitration proceeding."  This language tracks closely with each of the federal test's elements.

11

¶ 20     Likewise, the evidentiary standard that courts apply under the FAA — clear and convincing evidence — finds its roots in the standard applicable to motions for relief under Fed. R. Civ. P. 60(b). *MCI Constructors*, 610 F.3d at 858.  Given the similarities between the federal and state versions of Rule 60, and taking into consideration the fact that a motion to confirm an arbitration award triggers a special statutory proceeding, and is not a "civil action" within the meaning of section 13–25–127(1), C.R.S. 2020, *see Estate of Guido v. Exempla, Inc.*, 2012 COA 48, ¶ 12, we conclude that a party seeking to vacate an arbitration award must satisfy the evidentiary standard that applies to a motion for a new trial under C.R.C.P. 60(b)(2), *see Sharma v. Vigil*, 967 P.2d 197, 199 (Colo. App. 1998) (holding, under C.R.C.P. 60(b)(2), that moving party carries the burden of "clear, strong, and satisfactory proof" that it is entitled to relief).

¶ 21     MSD urges us to reject the federal test, arguing that, due to differences between the CRUAA and the FAA with respect to the limitations period for filing a motion to vacate, "federal decisions do not provide guidance."  In particular, MSD maintains that there is no due diligence requirement under the CRUAA, and that the only

reason the FAA requires a showing that the fraud was not discoverable by exercising due diligence prior to or during the arbitration is because it "does not separately address the time for motions to vacate" predicated on that ground. Under section 13–22–223(2), on the other hand, a party in MSD's position must seek relief

> within ninety-one days after the movant receives notice of the award . . . unless the movant alleges that the award was procured by corruption, fraud, or undue means, in which case the motion must be made within ninety-one days after either the ground is known or by the exercise of reasonable care should have been known by the movant.

¶ 22    As we understand the argument, MSD maintains that this provision of the CRUAA relieved it from having to bring Price's alleged fraud to the arbitrator's attention during the proceedings. Rather, MSD's theory is that, so long as it filed its motion to vacate within ninety-days after it received notice of the award, it does not matter when it discovered (or should have discovered) the alleged fraud that led to that award.

¶ 23    This position runs headlong into the division's holding in *PFW*, which held unequivocally that it was "incumbent upon" a party who

13

knew or should have known of corruption, fraud, or undue means during the arbitration process to raise those concerns with the arbitrator. *PFW*, ¶ 42. We agree with *PFW* on this point, and we consequently are not persuaded that the limitation on the time to challenge an arbitration award on the grounds of corruption, fraud, or undue means in section 13–22–223(2) meaningfully distinguishes the CRUAA from the FAA.

¶ 24 Accordingly, we agree with Price that the federal cases addressing claims of corruption, fraud, or undue means under the FAA, as well as similar state cases arising under the Uniform Arbitration Act, provide appropriate guidelines for resolving similar arguments under section 13–22–223(1)(a). The three-part test laid out above engages the court in the appropriate inquiries to resolve this issue, and we therefore apply it here.

### III. Application

#### A. Standard for Hearing

¶ 25 At the threshold, to the extent that MSD contends that the district court was required to hold a hearing on its motion to vacate, we disagree.

14

¶ 26 According to section 13–22–205(1), C.R.S. 2020, "an application for judicial relief" from an arbitration award "must be made by motion to the court and heard in the manner provided by law or court rule for making and hearing motions." Thus, a motion to vacate an arbitration award should be treated by the district court like a motion in a typical civil case.[4]

¶ 27 C.R.C.P. 121, section 1–15(4) governs trial court motions practice. The rule encourages the disposition of motions "upon the written motion and briefs submitted." *BFN*, 141 P.3d at 942. And because written motions practice generally affords parties adequate notice and a reasonable opportunity to be heard, *see Blood v. Qwest Servs. Corp.*, 224 P.3d 301, 318 (Colo. App. 2009), *aff'd*, 252 P.3d 1071 (Colo. 2011), hearings need not be granted as a matter of course. That is particularly true in the arbitration context because "[i]t would defeat the purpose of arbitration if a reviewing court were obligated to give the parties all the due process owed under the

---

[4] Similarly, a motion to vacate an arbitration award under the FAA, 9 U.S.C. § 6, is treated procedurally in the manner of motions. *See Health Servs. Mgmt. Corp. v. Hughes*, 975 F.2d 1253, 1258 (7th Cir. 1992); *BFN-Greeley, LLC v. Adair Grp., Inc.*, 141 P.3d 937, 942 (Colo. App. 2006).

rules of civil procedure." *BFN*, 141 P.3d at 942; *see also Karppinen v. Karl Kiefer Mach. Co.*, 187 F.2d 32, 35 (2d Cir. 1951) ("It is unnecessary for us to lay down any general rule as to when or how far oral hearings on questions of alleged perjured testimony before arbitrators should be allowed. It is enough to say that even if perjury be 'fraud' within the meaning of the Arbitration Act, such hearings should only be granted with reluctance . . . ."); *In re Marriage of Eggert*, 53 P.3d 794, 796 (Colo. App. 2002).

¶ 28    Here, because MSD's motion and supporting affidavits did not make a threshold showing that it acted with due diligence to discover the misappropriation before the arbitration was over, the district court did not deem it necessary to hold a hearing on the issues presented. Because, as we discuss in detail below, MSD's submission did not demonstrate due diligence, and because motions to confirm and vacate arbitration awards should, if possible, be decided only on the written materials submitted, we agree that no hearing was required. *See Seattle Packaging*, 972 P.2d at 579. We therefore turn next to the merits of the district court's order.

## B.    Merits

¶ 29    The test that we apply today is framed in the conjunctive, meaning that the party seeking to vacate an award on the grounds that it was procured by corruption, fraud, or undue means must show by clear and convincing evidence that (1) fraud occurred; (2) the fraud was not discoverable by exercising due diligence prior to or during the arbitration; *and* (3) the fraud had a material effect on a dispositive issue in the arbitration.  A failure to establish any of these elements at this stage of the proceedings will doom the effort. *See id.*  We therefore only briefly consider the first and third prongs of the test before turning to the dispositive issue — whether MSD made an adequate showing that it could not have discovered the fraud earlier by exercising due diligence.

### 1.    Whether the Fraud Occurred

¶ 30    The affidavits that MSD submitted with its motion to vacate the arbitration award made out a case of fraud in the form of perjured testimony from Price concerning, among other things, the income that she had realized from her contract with MSD.  And as we have already noted, "fraud" under section 13–22–223(1)(a) can

encompass a witness's perjury during the arbitration proceeding. *BFN*, 141 P.3d at 941; *Bentley*, 104 P.3d at 332.

## 2. Nexus

¶ 31 The third prong of the test, which requires the movant to establish "a causal relation between the improper conduct and the arbitration award," *Nasca*, 12 P.3d at 349, presents a closer question, but because we reject MSD's contentions on another ground, it is one that we need not reach. On one hand, federal courts recognize that "[t]he requisite nexus may exist where fraud prevents the [arbitrator] from considering a significant issue to which it does not otherwise enjoy access." *Forsythe Int'l, S.A. v. Gibbs Oil Co. of Tex.*, 915 F.2d 1017, 1022 (5th Cir. 1990). And Price's alleged misdeeds, if proven, could have directly related to the potentially dispositive question of which party breached the contract first. *See Coors v. Sec. Life of Denver Ins. Co.,* 112 P.3d 59, 64 (Colo. 2005) ("Under contract law, a party to a contract cannot claim its benefit where he is the first to violate its terms."). That is, if Price committed fraud, then she breached the contract first. And if she breached the contract first and then lied about it on the

stand, then the fact that she did so would likely have been a significant issue in the arbitration.

¶ 32    On the other hand, courts have typically been reluctant to vacate arbitration awards in cases where the perjured testimony does not bear directly on the issues in the case. *See, e.g., Int'l Brotherhood of Teamsters, Local 519*, 335 F.3d at 503–04 (considering whether the alleged fraud was "clearly connected to an issue material to the arbitration"); *Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co.*, 397 F.2d 594, 600 (3d Cir. 1968) ("[E]ven if perjury is proven and constitutes fraud under § 10(a) of the [FAA], it will not justify the vacation of an award if it concerns an issue remote from the question to be decided."); *Karppinen*, 187 F.2d at 35 (same). In this case, the arbitration was about whether MSD timely terminated its contract with Price. No one claimed that Price's alleged misappropriations prompted MSD to terminate the contract — or, for that matter, that MSD was even aware of any irregularities when it did so. Price's alleged misconduct, and any concealment of that alleged misconduct, were therefore unrelated to the disagreement that led to the arbitration.

19

¶ 33     Whether there is a sufficient nexus between the arbitration award and any perjury on Price's part is thus a thorny question, but because the test that we adopt today is framed in the conjunctive, we ultimately need not decide it.  Instead, as we explain next, we affirm the district court's ruling because it is clear from the record that MSD did not exercise due diligence with respect to Price's alleged fraud.

### 3.     Due Diligence

¶ 34     Requiring due diligence prevents the movant from taking a "second bite at the apple" if the fraud could have been discovered before the arbitration was over.  *A.G. Edwards & Sons, Inc. v. McCollough*, 967 F.2d 1401, 1404 (9th Cir. 1992).  If the movant could have rebutted the adversary's claims or evidence before the arbitrator, the scales will tip in favor of preserving the award's finality.  *Karppinen*, 187 F.2d at 35.

¶ 35     MSD contends that it "could not reasonably have discovered" Price's misappropriations before the end of the arbitration proceedings due to

> the size and complexity of its practice,
> including the large number of patients,
> multiple locations, and sources of payment,

including various insurers; the elaborate scheme used by Price/Peak Billing to conceal her misappropriations; and her efforts to prevent MSD from gaining access to its practice management software system, called Kareo.

¶ 36 Price responds that these hardships are insufficient to prove that MSD could not have discovered the alleged fraud earlier. The district court likewise ruled that MSD's argument was conclusory and that there was "no evidence to conclude that the misappropriation could not have been discovered" before the award was entered.

¶ 37 To be sure, MSD offered some explanation, both in the district court and in its briefing before us, as to why it was not easy to discover the alleged misappropriations. But what it did not do is describe what actions it took, if any, to promptly investigate its suspicions about Price's conduct. We assume that MSD asserted its unclean hands defense in good faith, and it seems probable that it would have made efforts to bolster that defense by thoroughly reviewing Price's performance under the contract during the fourteen months that the two parties were engaged in arbitration against one another. Yet despite the fact that MSD gained control

over the billing system shortly after it terminated Price's contract, an affidavit from MSD's Chief Operations Officer avers that she discovered Price's alleged misconduct *after* the arbitration hearing was over, when she noticed an "anomaly in one of the patient records" while performing back billing. This discovery triggered a substantial inquiry into Price's billing practices, but the entire effort came after the arbitrator had issued the award.

¶ 38    To satisfy the due diligence prong, MSD had to do more than simply allege that it was difficult to discover Price's alleged misappropriations. MSD also needed to show that it had "follow[ed] up on possessed or reasonably available information or resources," *Owens v. Tergeson*, 2015 COA 164, ¶ 45, such as the billing system that it assumed control of when it terminated the contract. But MSD did not describe what investigative steps it took, if any, before or during the arbitration, or how any efforts to investigate Price's alleged misconduct were thwarted. Thus, as the district court concluded, the briefing and affidavits that MSD submitted did not show that Price's alleged scheme was not reasonably discoverable before the arbitration ended, nor did they demonstrate that MSD

acted with due diligence to uncover fraud on Price's part while the arbitration proceedings were ongoing.

¶ 39 Because MSD did not make an adequate showing that it acted with due diligence to discover Price's alleged misconduct, we conclude that the district court appropriately denied its motion to vacate the arbitration award.

## IV. Conclusion

¶ 40 The district court's judgment is affirmed.

JUDGE FURMAN and JUDGE BERGER concur.